1  Carl E. Forsberg, WSBA #17025
2  Patrick S. Brady, WSBA #11691
   William C. Gibson, WSBA #26472
3  Forsberg & Umlauf, P.S.
   901 Fifth Ave., Suite 1700
4  Seattle, WA 98164
   Phone: (206) 689-8500
5

6              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WASHINGTON
7

8  AMERICAN CASUALTY CO. OF          No. CV-08-5077 LRS
   READING, PA,
                                     **AMERICAN CASUALTY CO. OF**
9        Plaintiff,                  **READING, PA'S**
                                     **MEMORANDUM OF POINTS**
10       vs.                         **AND AUTHORITIES IN**
                                     **SUPPORT OF ITS MOTION**
11 OASIS PHYSICAL THERAPY,           **FOR PARTIAL SUMMARY**
   PLLC, MINDI IRVINE, LANCE         **JUDGMENT**
12 IRVINE, RAFAT SHIRINZADEH
   and YVONNE SHIRINZADEH,           **NOTED FOR HEARING:**
13 KELLY COX, SUSAN TABER and        **JULY 9, 2009 AT 2:30 P.M. IN**
   ANGELA HART,                      **RICHLAND**
14
15       Defendants.

16          I.  **INTRODUCTION AND RELIEF REQUESTED**

17        American Casualty is defending Oasis Physical Therapy ("OPT"), Melinda

18 Irvine ("Irvine") and Rafat Shirinzadeh ("Shirinzadeh") against three underlying

19
   lawsuits filed by Kelly Cox, Susan Taber, and Angela Hart, who make claims
20
   arising out of acts of sexual intimacy.
21

22

23

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 1

406918 / 1910.0015

American Casualty seeks a ruling that it has no duty to defend or indemnify Shirinzadeh, OPT, or Irvine against the allegations in the Cox and Hart actions. The American Casualty policies contain an exclusion for any act of sexual intimacy, which precludes a duty to defend after a regulatory ruling has found that such an act occurred. Here, an investigation and licensure proceeding by the Washington Department of Health ("DOH") determined, as set forth in its October 26, 2007 Findings of Fact, that Shirinzadeh committed such acts toward seven unnamed patients, B through H. Both Kelly Cox and Angela Hart (two of the three plaintiffs in the underlying actions) state in pleadings that they were among the individuals identified as Patients B-H in the DOH proceedings. In addition, both Cox and Hart attach the October 26, 2007 Findings of Fact to their underlying complaints against OPT, Shirinzadeh, and Irvine.[1]

American Casualty's motion is based *solely* on the pleadings filed in the underlying actions, as well as the DOH Findings of Fact attached to those pleadings. American Casualty does not seek, through this declaratory judgment action or this motion, to litigate the merits of the underlying claims nor does it seek to litigate any facts which would affect OPT and Shirinzadeh's defense in

---

[1] Because the events alleged by Susan Taber came too late to be involved in the DOH Findings, this motion applies only to the Cox and Hart claims against the insureds, not the Taber claims.

American Casualty Co. of Reading, PA's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment – 2

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

any of the underlying actions.  For purpose of this action and this motion, American Casualty assumes the claims behind the underlying actions and the DOH proceeding are without merit.  But even if proven, the underlying Cox and Hart allegations would not be covered because, among other reasons, they are excluded by the sexual intimacy exclusion in the American Casualty policy.

## II.  FACTUAL BACKGROUND

Please see accompanying Statement of Facts.

### A.    The Underlying Hart and Cox Allegations

Angela Hart's Complaint, filed in the U.S. District Court, Eastern District of Washington, in July 2008, alleges that Oasis Physical Therapy (OPT) is a Washington professional limited liability company with its principal place of business in Pasco, Franklin County, Washington.  It alleges that Melinda Irvine and Rafat Shirinzadeh are physical therapists and owners of OPT, and that Angela Hart was an employee there from 2002 through 2006.  Paragraph 12 alleges:

> Shirinzadeh … continually hugged and touched plaintiff and other female employees. … Shirinzadeh informed plaintiff she … required physical therapy … The 'treatment' sessions became increasingly more invasive, and Rafat Shirinzadeh touched plaintiff inappropriately for his own sexual gratification …[2]

---

[2]Brady Dec., Ex. 1.

American Casualty Co. of Reading, PA's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment – 3

406918 / 1910.0015

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

Hart's Paragraph 18 alleges that in a September 2006

> session, Rafat Shirinzadeh exposed and fondled
> Plaintiff's breasts and stated that she had 'nice boobs.'
> After the session, he stayed in the room and handed
> Plaintiff her clothing as she dressed, then gave her a
> sensual hug.[3]

Hart's Paragraph 25 alleges: "[T]he DOH determined Rafat Shirinzadeh

had engaged in sexual conduct and that his conduct violated the standards

applicable to credentialed physical therapists." The DOH findings are attached as

Exhibit 1 to the Hart Complaint.[4]

Hart's Paragraphs 26 and 27 allege that in May 2008, Melinda Irvine

signed a Stipulated Findings of Fact, Conclusions of Law and Agreed Order

pertaining to DOH charges:

> By signing the Agreed Order, Ms. Irvine stipulated to the
> following:  In 2004 she received complaints that her
> business partner, Rafat Shirinzadeh was failing to drape
> patients properly; she failed to report Shirinzadeh's
> conduct to the DOH or Board of Physical therapy; in
> 2006 she received a complaint her business partner had
> inappropriately touched a patient during a treatment
> session; and she admitted also failing to report this
> inappropriate touching to the Board of Physical Therapy.

The Irvine Stipulated Findings of Fact, Conclusions of Law and Agreed Order are

---

[3]Brady Dec., Ex. 1.
[4]Brady Dec., Ex. 1.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 4

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

1  Exhibit 2 to the Hart Complaint.[5]

2  Filed in Superior Court, Franklin County, in December 2007, Kelly Cox's

3  Amended Complaint, paragraph 4.1.1, alleges that she was an employee of OPT,

4  and "was also a patient who received physical therapy treatment from Rafat

5  Shirinzadeh." Paragraph 5.1.5 alleges that she was

6

7          referred for treatment to correct an area of numbness
           between her shoulder blade and thoracic vertebra. Mr.
8          Shirinzadeh insisted on treating this employee/patient
           'skin on skin.' The 'therapy' sessions for her back
9          became progressively more invasive and resulted in
           Shirinzadeh positioning the plaintiff on her back and
10         performing what amounted to breast massage for an
           extended period of time.[6]
11

12 The DOH Findings are Attachment A to Cox's Amended Complaint.[7]

13     Cox's Amended Complaint makes claims for Medical Negligence,

14 Sex/Gender Hostile Environment Discrimination, Negligence, Negligent Hiring,

15 Retention and Supervision, and Intentional/Negligent Infliction of Emotional

16 Distress, Outrage, Assault and Battery. All alleged injuries and all claims alleged

17 against all defendants <u>arise out of</u> alleged sexual intimacy.[8]

18

19

20
   _____
21 [5]Brady Dec., Ex. 1.
   [6]Brady Dec., Ex. 2.
22 [7]Brady Dec., Ex. 2.
   [8]See the allegations quoted in American Casualty's accompanying Statement of Facts, paragraph 11.

23

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 5

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

**B.    The Sexual Intimacy Exclusion**

American Casualty has issued Healthcare Provider Professional Liability Insurance, Policy No. 0252126267, to Oasis Physical Therapy for four policy periods, October 15, 2003 to October 15, 2004, 2004-05, 2005-06, and 2006-07. The policies provide Professional Liability Coverage and General Liability Coverage.[9]    The pertinent terms are substantially the same for all four policy periods.

American Casualty has filed this action for declaratory judgment against Oasis Physical Therapy and OPT's owners, Mindy Irvine and Rafat Shirinzadeh, and their spouses, as well as against the three plaintiffs in the underlying actions, Kelly Cox, Susan Taber, and Angela Hart.    American Casualty is defending against all three underlying lawsuits under a reservation of rights.[10]

American    Casualty's    general    liability    coverage,    Section    IV. **EXCLUSIONS,** states:

> We will not defend any **claim** for, or pay any amounts…
> based on, arising out of, or related to:
>
> V. any act of sexual intimacy, sexual molestation or
> sexual **assault**. We shall provide **you** with a defense of
> such **claim** unless or until such act has been determined
> to have occurred, by any trial verdict, court ruling,
> regulatory ruling or legal admissions, whether appealed

---

[9]Brady Dec., Exs. 3 - 6.
[10]Brady Dec., Exs. 7 – 11.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 6

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

> or not. Such defense will not waive any of our rights under this policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against **you**.

The professional liability coverage, Section V. Exclusion P, contains identical language.[11]

Under the exclusion, American Casualty has no duty to defend any claim arising out of any act of sexual intimacy, as determined by a regulatory ruling. The DOH has determined that acts of sexual intimacy occurred between Shirinzadeh and seven women or girls, including two (Kelly Cox and Angela Hart) of the three plaintiffs in the underlying actions.  Attached to the Cox and Hart complaints, the October 26, 2007 Findings of Fact, Conclusions of Law, and Final Order issued by the Washington Department of Health, Board of Physical Therapy, determined that "[Rafat Shirinzadeh's] conduct described in Findings of Fact 1.3, 1.4, 1.11, 1.12, 1.13, 1.14 and 1.15 [Patients B through H] constitutes a violation of RCW 18.130.180(7) and (24) and WAC 296-915-182, abuse of a patient or sexual contact or sexual activity with a client or patient."[12]  (The claims for Patient A were withdrawn.)

---

[11]Brady Dec., Ex. 3 at 0011, 0013, 0019, 0021; Ex. 4 at 0040, 0042, 0056, 0058; Ex. 5 at 0073, 0075, 0084, 0086; Ex. 6 at 0104, 0106, 0115, 0117.
[12]Brady Dec., Ex. 1 at page 035 (numbering in lower right hand corner).

American Casualty Co. of Reading, PA's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment – 7

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

406918 / 1910.0015

Kelly Cox and Angela Hart have stated in their pleadings that they are included among Patients B through H.   Paragraph 44 of American Casualty's Amended Complaint alleges:

> On information and belief, the plaintiffs in the foregoing <u>Cox</u> and <u>Hart</u> lawsuits were among the complainants identified as 'Patients A through H' in the DOH proceedings and complainants for whom the DOH determined that "The Department proved with clear and convincing evidence that [Rafat Shirinzadeh's] conduct described in Findings of Fact 1.3., 1.4, 1.11, 1.12, 1.13, 1.14 and 1.15 constitutes a violation of RCW 18.130.180(7) and (24) and WAC 296-915-182, abuse of a patient or sexual contact or sexual activity with a client or patient.[13]

In answer to this paragraph, Cox, Taber and Hart have responded:  "Admit".[14]

Shirinzadeh, OPT, and Irvine have not factually contested that Kelly Cox and Angela Hart were among the complainants identified as patients B through H in the DOH determination.   In response to paragraph 44 of the Amended Complaint, Rafat Shirinzadeh pleads: "This paragraph invades the confidentiality of witness' identities in the DOH proceeding.   These defendants decline to respond."[15]   But any confidentiality belongs to Cox and Hart, and they claim none; on the contrary, they plead that they were among the complainants.   In response to paragraph 44, Defendants OPT and Irvine plead: "[T]hese defendants

---

[13]Brady Dec., Ex. 12.
[14]Brady Dec., Ex. 13.
[15]Brady Dec., Ex. 14.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 8

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

406918 / 1910.0015

are without sufficient information to admit or deny, and therefore deny the same."[16]  Cox and Hart, however, have sufficient information, and they admit the same.

### III. ISSUE

The sexual intimacy exclusion authorizes termination of defense for a claim arising out of any act of sexual intimacy, after a regulatory ruling has determined that such an act occurred.  The DOH, in Findings attached to the Cox and Hart complaints, has determined that Shirinzadeh's conduct constituted sexual contact or sexual activity with a client or patient, including Cox and Hart. Do the sexual intimacy exclusion and the DOH Findings preclude any American Casualty duty to defend or indemnify against the Cox and Hart claims?

### IV. LEGAL ARGUMENT

#### A.    The Underlying Record Precludes Defense and Indemnity

Under the sexual intimacy exclusion, defense shall be provided "unless and until [any act of sexual intimacy, sexual molestation or sexual assault] has been determined to have occurred, by any . . . regulatory ruling, whether appealed or not."  Because the DOH regulatory ruling has determined that sexual intimacy occurred, the sexual intimacy exclusion bars coverage and defense of the

---

[16]Brady Dec., Ex. 15.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 9

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

406918 / 1910.0015

underlying claims of Cox and Hart against Shirinzadeh, OPT and Irvine.

A declaratory judgment ruling can order termination of a reservation of rights defense while underlying litigation is pending against the insured. See Farmers Ins. Group v. Johnson, 43 Wn. App. 39, 41, 44 (1986) (insurer entitled to withdraw defense, based on application of exclusion). Scottsdale Ins. Co. v. Int'l. Protective Agency, 105 Wn. App. 244, 249, 19 P.3d 1058 (2001) (no duty to defend or indemnify where "an exclusion clearly and unambiguously applies to bar coverage.") A finding of no coverage means there is no duty to defend. Western National Assurance Co. v. Hecker, 43 Wn. App. 816, 719 P.2d 954 (1986).

Any duty to defend is determined on the basis of the underlying complaints against the insured and the applicable policy language. Viking Ins. Co. of Wisc. v. Hill, 57 Wn. App. 341, 347-349 (1990); Farmers Ins. Co. of Wash. v. Romas, 88 Wn. App. 801, 808 (1997). Though the duty to defend is broader than the duty to indemnify, there is no duty to defend when there is no potential for coverage. E-Z Loader Boat Trailers, Inc. v. Travelers Indemnity Co., 106 Wn.2d 901, 908, 726 P.2d 439 (1986). The sexual intimacy exclusion and the DOH determination mean there is no potential for coverage as to the Cox and Hart actions.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 10

406918 / 1910.0015

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 • (206) 689-8501 FAX

American Casualty is not seeking a finding that Shirinzadeh engaged in acts of sexual intimacy, but only an acknowledgement of a <u>prior</u> regulatory ruling, the DOH determination concerning Shirinzadeh and acts of sexual intimacy which is <u>attached to the underlying</u> Cox and Hart complaints.

In <u>Oregon Ins. Guaranty Assoc. v. Thompson</u>, 93 Or. App. 5, 760 P.2d 890 (1988), rev. denied, 307 Or. 303, 767 P.2d 443 (1989), the court found no duty to defend or indemnify an insured against trespass allegations.  **(See attached cases.)**  <u>Attached to the underlying</u> pleadings making those allegations was a "contempt judgment [from an earlier proceeding] and the court's finding in that proceeding that [the insured's] conduct was intentional" trespass.  760 P.2d at 893.  "If lack of coverage has uncontrovertibly been established in a separate judicial proceeding, the insurer has no obligation to defend." 760 P.2d at 893.  "[T]he contempt judgment 'uncontrovertibly established' that the trespass was intentional and, therefore, was outside the scope of the policy's coverage."  <u>Id</u>. So, too, in our case, the DOH regulatory ruling, attached to the underlying Cox and Hart complaints, and determining acts of sexual intimacy by Shirinzadeh, means there is no coverage and no defense under the sexual intimacy exclusion.

**B.    Any Act of Sexual Intimacy Precludes Coverage for All Insureds**

The exclusion bars coverage for claims <u>arising out of</u> any act of sexual

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 11

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

intimacy, whether or not each insured was the actor. "Arising out of" is broadly construed, whether it appears in a coverage provision or an exclusion. It has a broader meaning than "caused by" or "resulted from," and instead means "originating from," "having its origin in," "growing out of", or "flowing from". Toll Bridge Authority v. Aetna Ins. Co., 54 Wn. App. 400, 404, 773 P.2d 906 (1989). "'Arising out of' does not mean 'proximately caused by.'" Munn v. Mutual of Enumclaw, 73 Wn. App. 321, 325, 869 P.2d 99 (1994). All claims and injuries alleged by Cox and Hart against all defendants arise from alleged sexual intimacy, the subject of the DOH determination.

OPT and Irvine contend that since the DOH determination applied only to Shirinzadeh, the exclusion cannot apply to them. But neither OPT nor Irvine can rewrite the policy to exclude coverage for a specific insured only if that insured was the actor. Coverage is excluded not only for the insured's liability for the insured's own act of sexual intimacy, but also for the insured's liability for any act of sexual intimacy by any person.

Coverage is excluded for liability of Shirinzadeh and OPT and Irvine for acts determined in the DOH findings regarding Shirinzadeh, notwithstanding a severability clause:

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 12

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

## IV. SEPARATION OF INSUREDS

This policy applies separately to each of **you** against whom a **claim** is brought except with respect to:

A.    the limits of liability; and

B.    any of **your** duties as the first **named insured** on the **certificate of insurance**.[17]

This severability provision applies only to limits of liability and certain duties or conditions. Cases in Washington and elsewhere have found that it does not negate the applicability of a sexual molestation exclusion to all insureds.

Caroff v. Farmers Ins. Co. of Washington, 98 Wn. App. 565, 989 P.2d 1233 (1999), rev. denied, 141 Wn.2d 1006, 10 P.3d 1073 (2000), involved child molestation by a teenage son. Affirming summary judgment, the court found no duty to defend or indemnify the insured parents for negligence claims brought against them. The policies excluded coverage for injury "arising out of the actual, alleged, or threatened molestation of a child by ... any insured." 98 Wn. App. at 568. "Standing alone, these exclusions clearly exclude coverage based on [the teenage son's] actions because the broad phrases 'any insured' and 'an insured' make coverage for all insureds contingent upon the actions of any one insured," despite a severability clause. 98 Wn. App. at 570.

---

[17] Brady Dec., Ex. 3 at 0003; Ex. 4 at 0029; Ex. 5 at 0062; Ex. 6 at 0093.

American Casualty Co. of Reading, PA's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment – 13

406918 / 1910.0015

> The child molestation exclusions are unambiguous and comprehensive .... In contrast, the severability clauses merely announce in general language that the policies apply separately to each insured. As such, they do not override the explicit provisions in the child molestation exclusions or make those exclusions ambiguous.

98 Wn. App. at 571. Similarly,

> [A] provision such as the exclusion dealing specifically with sexual molestation of children prevails over the more general severability clause. Moreover, '[t]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the ... insureds. The purpose is not to negate bargained-for exclusions which are plainly worded.'

Caroff, quoting Northwest G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 183 (N.D. 1994).

In Ristine v. Hartford Ins. Co. of the Midwest, 195 Or. App. 226, 97 P.3d 1206 (2004), the insurance policy excluded coverage for injury "[A]rising out of sexual molestation..." **(See attached cases.)** 97 P.3d at 1207. After a husband allegedly molested a girl, the girl's parents sued the insured husband and wife. The claims against the wife were for negligence. 97 P.3d at 1207. Nevertheless, "the parties...do not appear to debate that plaintiffs' claim against [the insured wife] 'arises out of' sexual molestation. The debate centers on whether the exclusion...must be understood to refer only to claims that arise out of sexual molestation *by the insured*". 97 P.3d at 1208 (emphasis in original).

American Casualty Co. of Reading, PA's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment – 14

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

The court rejected the argument that a severability clause meant coverage was excluded only for the husband, the actor. The exclusion

> contains no wording that, reasonably construed, imposes such a limitation on the exclusion. The policy refers to claims arising out of sexual molestation without reference to any limitation as to who committed the act of molestation. Thus, the policy appears to state that the exclusion is based on the nature of the act, not the identity of the actor.

97 P.3d at 1209. The Ristine court noted:

> Plaintiffs urge us to read the exclusion as if it stated that it applied to bodily injury 'arising out of sexual molestation *committed by the insured.*' To do that, however, we would have to insert wording into the policy that, from all indications, was consciously omitted.

Ristine, 97 P.3d at 1209. Further,

> Even though the policy applies separately to [the insured husband and the insured wife], the fact remains that the policy that separately applies to them contains an exclusion for bodily injury '[a]rising out of sexual molestation'. There is nothing in the wording of the severability provision itself that remotely suggests that it affects the substance of any provisions concerning coverage or exclusions.

97 P.3d at 1209-210.

In support of its conclusion, the Ristine court cited a Washington case, Mutual of Enumclaw Ins. Co. v. Cross, 103 Wn. App. 42, 10 P.3d 440 (2000), rev. denied, 142 Wn.2d 1025, 21 P.3d 1150 (2001), involving homicide by abuse

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 15

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

of a foster child, committed by an insured husband.   Affirming summary judgment, the court found no duty to defend the insured husband or the insured wife, because "the intentional acts of [the husband], 'an insured,' invoked the policy exclusion, and, standing alone, preclude coverage for [the insured wife]." 103 Wn. App. at 56.   Despite a severability clause, the "exclusion bars coverage for all insureds based on the intentional acts of any one insured."   103 Wn. App. at 62.   So too, here, there is no defense or coverage for OPT or Irvine because of the DOH determination as to one insured, Shirinzadeh.

The Cross court cited and relied upon numerous cases in other jurisdictions, including Taryn E.F. by Grunewald v. Joshua M.C., 178 Wis.2d 719, 505 N.W.2d 418 (Wis. Ct. App. 1993), a case affirming summary judgment against coverage of insured parents whose insured son sexually molested a child. **(See attached cases.)**  A sexual molestation exclusion for "liability which results directly or indirectly from … sexual molestation of a person" applies against the parents, even though they were "innocent insureds" and despite a severability clause.   Although a different theory of liability was alleged against the parents, their liability was still "a direct result of their minor son's … acts of sexual molestation." 505 N.W.2d at 422.

Flores v. AMCO Ins. Co., 2007 WL 3408255 (E.D.Cal., Nov. 15, 2007)

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 16

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

aff'd, 2009 WL 1096306 (9th Cir., 2003), involved an insured wife whose insured husband and son and others sexually molested a minor.[18] **(See attached cases.)** A sexual molestation exclusion applied to bodily injury "arising out of any … sexually activity or conduct." Id. at *4.  The court noted that although the insured wife's potential liability involved negligent failure to supervise, "her potential liability derives from alleged bodily injury arising out of sexual activity or conduct." Id. at *6.  The court found that the insurance policy

> contains a global sexual molestation exclusion which is not limited to an insured's conduct.  As such, the exclusion applies to [the insured wife], despite that she is not an alleged active participant in the sexual activity … [N]either the … policy's sexual molestation exclusion nor its severability provision limit the sexual molestation exclusion's scope to sexual conduct committed by [the insured wife].

Id. at *7.  Despite a severability clause, the alleged negligence of the insured wife arose from alleged sexual molestation by others, and was not covered.  "Without the molestation there would be no injury and thus, no basis for the negligence claim." Id. at *8, quoting Allstate Ins. Co. v. Bates, 185 F.Supp 2d 607, 613 (E.D.N.C. 2000).

Hingham Mut. Fire Ins. Co. v. Smith, 69 Mass. App. Ct. 1, 865 N.E. 2d 1168 (2007), involved an insured husband, wife, and son.  **(See attached cases.)**

---

[18]Under E.D.W.A. LR 7.1(g)(2), unpublished decisions filed after January 1, 2007 may be cited.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 17

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

406918 / 1910.0015

When the son sexually molested children, the husband and wife conceded that there was no coverage for the son. 865 N.E. 2.d at 1170. The policy provided no coverage for bodily injury "that arises out of ... the actual, alleged or threatened sexual molestation of a person." Id. at 1171. The court noted that "the term 'arising out of' has been given a broad construction by our cases," including a case that "barred coverage for judgment awarded in a negligence action for injuries resulting from brutal rape." Id. at 1171. The negligent supervision allegations against the husband and wife arose out of the sexual molestation by their son: "But while the alleged cause of the injuries is different, the bodily injuries allegedly suffered by the ... children are the same." Id. at 1172. Further, "it is the source from which the ... personal injury originates rather than the specific theories of liability alleged ... which determines the insurer's duty to defend." Id. at 1171. Despite a severability clause, the court affirmed summary judgment against coverage.

## V. **CONCLUSION**

For the reasons set forth above, the Court should enter an order (1) allowing the termination of American Casualty's defense of OPT, Mindi Irvine and Rafat Shirinzadeh and (2) declaring there is no duty by American Casualty to indemnify OPT, Mindi Irvine and Rafat Shirinzadeh in the Cox and Hart actions.

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 18

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

1    DATED this 1st day of May, 2009.

2                              FORSBERG & UMLAUF, P.S.

3

4                              _____
                               Carl E. Forsberg, WSBA #17025
5                              Patrick S. Brady, WSBA #11691
                               William C. Gibson, WSBA #26472
6                              Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 19

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE ● SUITE 1700
SEATTLE, WASHINGTON  98164-2050
(206) 689-8500 ● (206) 689-8501 FAX

## **CERTIFICATE OF SERVICE**

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served the foregoing AMERICAN CASUALTY CO. OF READING, PA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT on the following individuals in the manner indicated:

Ms. Beth A. Terrell
Ms. Jennifer Rust Murray
Terrell Marshall & Daudt, PLLC
3600 Fremont Ave. N.
Seattle, WA 98103

(X) Via ECF

Mr. Christopher J. Mertens
Miller Mertens & Spanner, PLLC
1020 N. Center Parkway, Suite B
Kennewick, WA 99336-7161

(X) Via ECF

Rafat and Yvonne Shirinzadeh
4616 W. Wernett Rd.
Pasco, WA 99301

(X) Via U.S. Mail

**SIGNED** this 1st day of May, 2009, at Seattle, Washington.

_Carol M. Simpson_
Carol M. Simpson

American Casualty Co. of Reading, PA's Memorandum of Points and
Authorities in Support of its Motion for Partial Summary Judgment – 20

406918 / 1910.0015

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1700
SEATTLE, WASHINGTON 98164-2050
(206) 689-8500 • (206) 689-8501 FAX

**ATTACHMENT TO AMERICAN CASUALTY'S MEMORANDUM OF
POINTS AND AUTHORITIES**

**SIGNIFICANT NON-WASHINGTON CASES RELIED ON BY AMERICAN
CASUALTY**

1.  Oregon Ins. Guaranty Assoc. v. Thompson, 93 Or. App. 5, 760 P.2d 890
    (1988, rev. denied, 307 Or. 303, 767 P.2d 443 (1989).

2.  Ristine v. Hartford Ins. Co. of the Midwest, 195 Or. App. 226, 97 P.3d 1206
    (2004).

3.  Taryn E.F. by Grunewald v. Joshua M.C., 178 Wis.2d 719, 505 N.W.2d 418
    (Wis. Ct. App. 1993).

4.  Flores v. AMCO Ins. Co., 2007 WL 3408255 (E.D. Cal., Nov. 15, 2007),
    aff'd 2009 WL 1096309 (9th Cir., 2009).

5.  Hingham v. Mutual Fire Ins. Co., 69 Mass. App. Ct. 1, 865 N.E.2d 1168
    (2007)

1.    <u>Oregon Ins. Guaranty Assoc. v. Thompson</u>, 93 Or. App. 5, 760 P.2d 890
      (1988, rev. denied, 307 Or. 303, 767 P.2d 443 (1989).

Westlaw.

760 P.2d 890
93 Or.App. 5, 760 P.2d 890
**(Cite as: 93 Or.App. 5, 760 P.2d 890)**

Court of Appeals of Oregon.
OREGON INSURANCE GUARANTY ASSOCI-
ATION, Respondent,
v.
Frank THOMPSON, Appellant.
**85-2215; CA A44664.**

Argued and Submitted March 29, 1988.
Decided Sept. 7, 1988.

General liability insurer brought declaratory judg-
ment action to determine whether it had obligation
to defend insured in trespass action. The Circuit
Court, Columbia County, Thomas E. Edison, J.,
entered judgment for insurer, and insured appealed.
The Court of Appeals, Joseph, C.J., held that: (1)
when policy had intentional acts exclusion, insurer
had no duty to pay when punitive damages assessed
against insured in trespass action established inten-
tional conduct; (2) insurer had no duty to defend in-
sured where original complaint for trespass alleged
that contempt judgment had been entered against
insured for violating injunction which prohibited
insured from entering landowner's property; (3)
when amended complaint deleted reference to con-
tempt judgment, insurer had duty to defend insured,
provided insurer received notice of amended com-
plaint; and (4) when insurer received no notice of
amended complaint, insurer had no duty to defend
insured even if lack of notice did not prejudice in-
surer.

Affirmed.

West Headnotes

**[1] Insurance 217 ☞2269**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2267 Insurer's Duty to Indemnify in
General
                217k2269 k. Insured's Liability for

Damages. Most Cited Cases
    (Formerly 217k433.1, 217k433(1))
When insured's general liability policy expressly
excluded coverage for intentional conduct, and jury
awarded punitive damages to landowner in trespass
action against insured, insurer had no duty to pay
judgment, as implicit in jury's award of punitive
damages was that insured acted willfully and inten-
tionally.

**[2] Insurance 217 ☞2915**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2915 k. Matters Beyond Pleadings.
Most Cited Cases
    (Formerly 217k514.10(1))
Although insurer has duty to defend only if claim is
covered by policy, duty is derived from allegations
in complaint, not by eventual verdict or insurer's
knowledge of facts not alleged in complaint.

**[3] Insurance 217 ☞2913**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2913 k. In General; Standard. Most
Cited Cases
    (Formerly 217k514.9(1))
If lack of insurance coverage has uncontrovertibly
been established in separate judicial proceeding, in-
surer has no obligation to defend insured.

**[4] Insurance 217 ☞2278(3)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or In-
juries
                        217k2278(3) k. In General. Most

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

760 P.2d 890
93 Or.App. 5, 760 P.2d 890
**(Cite as: 93 Or.App. 5, 760 P.2d 890)**

Page 2

Cited Cases
(Formerly 217k514.10(2))
When general liability policy had exclusion for intentional acts, and when pleading alleged that insured had been found in contempt of injunction prohibiting insured from entering landowner's property, insurer had no duty to defend insured, as contempt judgment "uncontrovertibly established" that insured's trespass was intentional.

**[5] Insurance 217 ☞2278(3)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or Injuries
                        217k2278(3) k. In General. Most Cited Cases
        (Formerly 217k514.10(2))

**Insurance 217 ☞2914**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2914 k. Pleadings. Most Cited Cases
        (Formerly 217k514.10(2))

**Insurance 217 ☞2919**

217 Insurance
    217XXIII Duty to Defend
        217k2916 Commencement of Duty; Conditions Precedent
            217k2919 k. Tender or Other Notice. Most Cited Cases
        (Formerly 217k514.10(2))
When general liability policy had exclusion for intentional acts, and when counterclaim against insured alleging trespass was amended to exclude reference to insured's contempt judgment for violating injunction which prohibited insured from entering landowner's property, after said judgment was va-

cated, insurer had duty to defend insured as there was no longer a conclusivedetermination of intentional conduct by insured, unless insurer did not receive notice of amended claim.

**[6] Insurance 217 ☞3147**

217 Insurance
    217XXVII Claims and Settlement Practices
        217XXVII(B) Claim Procedures
            217XXVII(B)2 Notice and Proof of Loss
                217k3143 Necessity
                    217k3147 k. Compliance as Condition Precedent. Most Cited Cases
        (Formerly 217k535)

**Insurance 217 ☞2919**

217 Insurance
    217XXIII Duty to Defend
        217k2916 Commencement of Duty; Conditions Precedent
            217k2919 k. Tender or Other Notice. Most Cited Cases
        (Formerly 217k535)
Notice of claim is condition precedent to insurer's duty to defend.

**[7] Insurance 217 ☞2914**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2914 k. Pleadings. Most Cited Cases
        (Formerly 217k544.1)
General liability insurer had no duty to defend insured where insurer initially decided not to defend insured based on allegations of intentional conduct in complaint and where insured failed to respond to insurer's requests to review amended complaint which contained allegations which would have required insurer to provide defense to insured.

**[8] Insurance 217 ☞2913**

217 Insurance
    217XXIII Duty to Defend

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

760 P.2d 890
93 Or.App. 5, 760 P.2d 890
(Cite as: 93 Or.App. 5, 760 P.2d 890)

217k2912 Determination of Duty
    217k2913 k. In General; Standard. Most
Cited Cases
    (Formerly 217k514.9(1), 217k514.8)
Insurer's duty to defend insured is independent of,
and not limited by, its duty to pay judgment against
insured.

**[9] Insurance 217 ⚖➔3168**

217 Insurance
    217XXVII Claims and Settlement Practices
        217XXVII(B) Claim Procedures
            217XXVII(B)2 Notice and Proof of Loss
                217k3166 Effect of Noncompliance
with Requirements
                    217k3168 k. Prejudice to Insurer.
Most Cited Cases
    (Formerly 217k539.8)
Whether insurer is prejudiced by insured's failure to
give notice of claim to insurer is irrelevant to issue
of insurer's duty to defend insured.
**\*\*891 \*6** Bert E. Joachims, Portland, argued the
cause and filed the brief for appellant.

I. Franklin Hunsaker, Portland, argued the cause for
respondent. With him on the brief were John A.
Bennett, Christopher A. Rycewicz, and Bullivant,
Houser, Bailey, Pendergrass & Hoffman, Portland.


Before WARDEN, P.J., JOSEPH, C.J., and VAN
HOOMISSEN, J.


**\*7** JOSEPH, Chief Judge.

This is a declaratory judgment action in which de-
fendant, the insured, appeals from a judgment hold-
ing that the insurer, plaintiff, had no duty under a
general liability policy to defend an action or to pay
a judgment against him. We affirm.

Plaintiff FN1 issued defendant a policy which
provides, in relevant part:

    FN1. Oregon Insurance Guaranty Associ-

ation was substituted as plaintiff after the
Insurance Commissioner declared the car-
rier, Forest Industries Insurance Company,
insolvent.

"I. Coverage L-Personal Liability.

"The company will pay on behalf of the insured all
sums which the insured shall become legally oblig-
ated to pay as damages because of bodily injury or
property damage to which this insurance applies,
caused by an occurrence, and the company shall
have the right and duty to defend any suit against
the insured seeking damages on account of such
bodily injury or property damage[.]

" \* \* \*

"III. Coverage N-Physical damage to property

" \* \* \*

"This coverage does not apply to injury or destruc-
tion:

"(a) \* \* \*

"(b) caused intentionally by an insured over twelve
years old.

" \* \* \*

"4. Insured's Duties in the Event of Occurrence,
Claim or Suit:

"(a) In the event of an occurrence, written notice
containing particulars sufficient to identify the in-
sured and also reasonably obtainable information
with respect to the time, place and circumstances
thereof, and the names and addresses of the injured
and of available witnesses, shall be given by or for
the insured to the [Insurance Company] or any of
its authorized agents as soon as practicable."

With one exception, the facts are undisputed. The
underlying action arose from a long-running dis-
pute between defendant and Scott about the use of a
right-of-way across **\*8** Scott's property. In June,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1977, Scott obtained an injunction prohibiting defendant from trespassing on his property. In May, 1979, Scott saw defendant working on a road and concluded that he was trespassing. Scott tried to stop him, and an altercation ensued. Defendant thereafter sued Scott for personal and property damages resulting from that incident.

In March, 1980, defendant was held in criminal contempt for violating the 1977 injunction in the course of the 1979 incident.**892 Scott then counterclaimed for trespass,[FN2] including punitive damages, in defendant's damage action and attached to his pleading a copy of the judgment holding defendant in contempt.[FN3] In May, 1982, defendant tendered the defense of that counterclaim to plaintiff, which rejected it on the grounds that defendant's alleged actions were intentional, and thus outside the scope of the policy's coverage, and also that it was prejudiced by defendant's untimely notice.

FN2. Scott's original counterclaim for trespass alleged:

"VII

"On or about May 31, 1979, plaintiff Frank Thompson entered on property belonging to the [defendant] * * * with heavy equipment and did then and there spread gravel and rock about the [defendant's] field.

"VIII

"Said actions of Thompson were without the consent or permission of the Scotts, and were done to the defendant's damage in the amount of $5,000.00.

"IX

"The actions of the plaintiff, Frank Thompson, were knowing and intentional, and the same is heretofore finally determined by this court by that certain judgment attached hereto as Exhibit 'B',

and in violation of societal interest, and defendants Scott are entitled to judgment for $60,000.00 punitive damages."

FN3. In the March, 1980, contempt judgment, the court found:

"[Defendant] knew and was aware of [the injunction].

" * * *

"[Defendant] entered upon said premises of * * * Scott, with heavy equipment and spread rock and gravel thereon.

" * * * [P]laintiff knowingly and intentionally entered the premises in violation of the above mentioned [injunction] and without justification."

Defendant's contempt conviction was set aside in October, 1983. In November of that year, Scott filed an amended counterclaim, which contained essentially the same allegations as his original counterclaim but excluded any reference to the contempt judgment. On July 19, 1984, defendant tendered defense of the amended counterclaim to plaintiff. *9 The letter accompanied a copy of the amended pleading but did not specifically point out that the contempt judgment had been set aside. The parties dispute whether plaintiff ever received the letter.

On August 30, 1984, a jury returned a verdict in favor of Scott on his trespass counterclaim, awarding $3,100 actual damages and $15,000 as punitive damages.[FN4] On October 30, 1984, defendant wrote plaintiff, demanding that it pay the adverse judgment, tendering defense of the appeal of that judgment and referring to plaintiff's purported receipt of the July 19, 1984, letter. The letter did not have with it a copy of the amended counterclaim pleading and did not mention the vacated contempt judgment. On November 9, 1984, plaintiff requested a copy of the July 19 letter and any further information that would clarify defendant's demands. Defendant did not respond. Plaintiff did not repres-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ent him on the appeal and ultimately brought this action.

> FN4. The parties stipulated that plaintiff did not have a duty under the insurance policy to pay the punitive damages awarded to Scott.

The trial court, relying on the contempt judgment, held that plaintiff had no duty to defend or to provide coverage for the liability arising from defendant's intentional conduct. It also rejected all of defendant's affirmative defenses and found that plaintiff had never received the July 19 letter.

[1] We first address plaintiff's duty to pay the judgment for Scott entered against defendant. Implicit in the jury's award of punitive damages in the underlying trespass action was that defendant wilfully and intentionally trespassed. Because the insurance policy expressly excludes coverage for intentional conduct, we hold that the trial court did not err in holding that plaintiff had no duty to pay the adverse judgment.

Plaintiff's duty to defend is a more difficult question. We must consider it separately for the original and the amended counterclaim. Defendant asserts that plaintiff had a duty to defend him on the original counterclaim for trespass. He relies on *Ferguson v. Birmingham Fire Ins.*, 254 Or. 496, 507, 460 P.2d 342 (1969), in which the court held that the insurer had to defend an action for wilfull trespass, despite**893 an express exclusion of coverage for intentional acts, because the *10 insured could have been held liable for negligent trespass without the complaint being amended. The court treated negligent trespass as a "lesser included offense" of intentional trespass. 254 Or. at 507, 460 P.2d 342.

[2][3] Although the duty to defend is generally determined by comparing the terms of the insurance policy with the allegations in the underlying complaint,[FN5] and an insurer has an obligation to defend if the injured claimant could recover under

those allegations on any basis for which the insurer affords coverage, *Oakridge Comm. Ambulance v. U.S. Fidelity, supra,* 278 Or. at 24 n. 5, 563 P.2d 164, those rules are applicable only "in the absence of any compelling evidence of no coverage." *Casey v. N.W. Security Ins. Co.,* 260 Or. 485, 489, 491 P.2d 208 (1971). If lack of coverage has uncontrovertibly been established in a separate judicial proceeding, the insurer has no obligation to defend. 260 Or. at 490, 491 P.2d 208.

> FN5. Plaintiff argues that the jury's implicit finding of intentional conduct in its award of punitive damages in the trespass action establishes that defendant's actions were not an "occurrence" within the meaning of the insurance policy, *see Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.,* 88 Or.App. 251, 253, 744 P.2d 1317 (1987), rev. den.305 Or. 102, 750 P.2d 496 (1988), which defines occurrence as
>
> > "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
>
> Although an insurer has a duty to defend only if the claim is covered by the policy, the duty is derived from the allegations in the complaint, not by the eventual verdict. 13A Couch, *Cyclopedia of Insurance Law* 469, § 51:44 (1982). The insurer's knowledge of facts not alleged in the complaint is irrelevant. *Oakridge Comm. Ambulance v. U.S. Fidelity,* 278 Or. 21, 24, 563 P.2d 164 (1977). To allow an insurer to withhold a defense until the question of coverage is resolved by the verdict would render the duty to defend illusory. *See Casey v. N.W. Security Ins. Co.,* 260 Or. 485, 489,490 P.2d 208 (1971).

[4] The original counterclaim was for intentional

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

760 P.2d 890
93 Or.App. 5, 760 P.2d 890
**(Cite as: 93 Or.App. 5, 760 P.2d 890)**

trespass, which would have included liability for negligent trespass. Without more, under *Ferguson,* there would have been a duty to defend. However, the counterclaim pleading also included the contempt judgment and the court's finding in that proceeding that defendant's conduct was intentional. When defendant first tendered the defense to plaintiff in May, 1982, the contempt judgment "uncontrovertibly established" that the trespass was intentional and, therefore, was outside the scope of the policy's coverage. Thus, plaintiff had no duty to defend against the counterclaim as originally pleaded, and it properly refused to do so.

**\*11** [5] When the contempt judgment was vacated and the counterclaim was amended to exclude reference to that judgment, there was no longer a conclusive determination of intentional conduct. On the basis of the allegations in the amended counterclaim, plaintiff would have had a duty to defend under *Ferguson v. Birmingham Fire Ins., supra,* unless it did not receive notice of the amended claim.

[6][7] An insurer must receive a copy of the pleading so that it may review the allegations to determine whether there is coverage. Notice of the claim is a condition precedent to the duty to defend. The trial court found that plaintiff did not receive the July letter, and that finding is supported by substantial evidence. Defendant's October, 1984, letter did not include the pleading, and he did not respond when plaintiff requested a copy of the July letter and additional information to clarify his demands. Without having knowledge that the counterclaim had been amended in a manner that could affect its contractual duty, plaintiff had no reason or basis on which to reconsider its initial decision not to defend.

[8][9] Defendant relies on *Halsey v. Fireman's Fund Ins. Co.,* 68 Or.App. 349, 354, 681 P.2d 168,*rev. den.*297 Or. 601, 687 P.2d 795 (1984), for the proposition that, even if he failed to give plaintiff notice, it still had a duty to defend, because it failed to carry its burden of proving prejudice from the lack of notice. Defendant's reliance is mis-

placed. In *Halsey,* we addressed only the duty to pay and not the duty to defend. An insurer's duty to defend**894 is independent of, and not limited by, its duty to pay. Without a pleading it has nothing on which to make that determination. When the duty to defend is at issue, the matter of prejudice from an insured's failure to give notice of the claim is irrelevant. Accordingly, we hold that plaintiff had no duty to defend, because defendant failed to satisfy the notice condition precedent.[FN6]

> FN6. Defendant's other arguments are without merit.

AFFIRMED.

Or.App.,1988.
Oregon Ins. Guar. Ass'n v. Thompson
93 Or.App. 5, 760 P.2d 890

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2.    <u>Ristine v. Hartford Ins. Co. of the Midwest</u>, 195 Or. App. 226, 97 P.3d 1206 (2004).

Westlaw.

97 P.3d 1206
195 Or.App. 226, 97 P.3d 1206
(Cite as: 195 Or.App. 226, 97 P.3d 1206)

Page 1

Court of Appeals of Oregon.
Leahbelle RISTINE, a minor By and Through her
guardian ad litem Barbara RISTINE, and Barbara
Ristine, individually, Appellants,
v.
HARTFORD INSURANCE COMPANY OF THE
MIDWEST, a foreign insurance company, Re-
spondent.
0204-03158; A120828.

Argued and Submitted May 19, 2004.
Decided Sept. 15, 2004.

**Background:** Mother of alleged sexual abuse vic-
tim, individually and as guardian ad litem for vic-
tim, acting as assignee of rights of wife of alleged
molester against their homeowners' insurer, sued
insurer, alleging breach of contract in insurer's fail-
ure to provide defense or to indemnify wife in
mother's underlying action against wife, which was
based on allegations that wife was negligent in fail-
ing to disclose that husband was convicted sex of-
fender and that wife recklessly inflicted emotional
distress in allowing victim to spend night in their
home. The Circuit Court, Multnomah County, Dav-
id Gernant, J., entered summary judgment in favor
of insurer. Mother appealed.

**Holding:** The Court of Appeals, Landau, P.J., held
that exclusion in homeowners' policy for bodily in-
jury claims "[a]rising out of sexual molestation"
applied to mother's underlying claim against wife,
and severability provision in policy did not limit
application of exclusion to claims against alleged
molester.
Affirmed.

West Headnotes

**Insurance 217 ☜2278(6)**

217 Insurance
  217XVII Coverage--Liability Insurance
    217XVII(A) In General

217k2273 Risks and Losses
  217k2278 Common Exclusions
    217k2278(2) Intentional Acts or In-
juries
      217k2278(6) k. Sexual Acts or
Abuse. Most Cited Cases
Exclusion in homeowners' insurance policy for
bodily injury claims "[a]rising out of sexual mo-
lestation" applied to underlying claim against wife
of alleged molester by mother of alleged sexual ab-
use victim, which was based on allegations that
wife was negligent in failing to disclose that hus-
band was convicted sex offender and that wife
recklessly inflicted emotional distress in allowing
victim to spend night in their home, and severabil-
ity provision in policy providing "[t]his insurance
applies separately to each insured" did not limit ap-
plication of exclusion to claims against alleged mo-
lester.
**1206 *227 Christine M. Cook argued the cause
and filed the brief for appellants.

R. Daniel Lindahl argued the cause for respondent.
With him on the brief were Ronald J. Clark and
Bullivant Houser Bailey PC.

Before LANDAU, Presiding Judge, and ARM-
STRONG and BREWER, Judges.

*228 LANDAU, P.J.

This is an insurance coverage case in which the is-
sue is whether defendant Hartford Insurance Com-
pany of the Midwest is obligated under its
homeowners' policy to cover a claim against its in-
sureds for failing to prevent the insured husband
from committing sexual abuse. Defendant contends
that **1207 it has no such obligation because the
policy expressly excludes from coverage bodily in-
jury claims "arising out of sexual molestation." The
trial court agreed and entered summary judgment in
favor of defendant. We affirm.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

97 P.3d 1206
195 Or.App. 226, 97 P.3d 1206
(Cite as: 195 Or.App. 226, 97 P.3d 1206)

The material facts are not in dispute. Defendant issued a homeowners' insurance policy to David and Carol Purcell. Three portions of the policy pertain to the issues in contention on appeal. First, the policy provided liability coverage for "bodily injury or property damage caused by an occurrence to which this coverage applies." Second, the policy also contained a list of exclusions from coverage for bodily injury or property damage

"a. Which is expected or intended by the insured;

"b. Arising out of or in connection with a business engaged in by an insured. * * *

"c. Arising out of the rental or holding for rental of any part of any premises by an insured. * * *

"d. Arising out of the rendering of or failure to render professional services;

"e. Arising out of a premises:

'(1) Owned by an insured;

'(2) Rented to an insured;

'(3) Rented to others by an insured that is not an insured location;

"* * * * *

"j. Which arises out of the transmission of a communicable disease by an insured;

"k. Arising out of sexual molestation, corporal punishment or physical or mental abuse[.]"

**\*229** Third, the policy contained a severability clause that stated, "This insurance applies separately to each insured."

Plaintiffs are Barbara Ristine and her minor daughter L. Plaintiffs filed a complaint against David Purcell and his wife Carol alleging that David Purcell had sexually abused L. The complaint alleged that David Purcell was a convicted sex offender and that Carol Purcell knew that he was a convicted of-

fender. The complaint further alleged that, "[f]rom approximately December of 1998 to August of 1999, while Mrs. Purcell's granddaughter was visiting her, L was invited by the granddaughter, with the consent of Mrs. Purcell to spend the night from time to time. During these visits, L was repeated[ly] sexually abused by Purcell." Based on those allegations of fact, the complaint alleged that David Purcell was liable to plaintiffs for battery, negligence, and reckless infliction of emotional distress. The complaint further alleged that Carol Purcell was liable for negligently failing to disclose to them that her husband was a sex offender and for allowing him to be alone with L. It also alleged that Carol Purcell was liable for reckless infliction of emotional distress because she allowed L to spend the night in the Purcell home.

The Purcells notified defendant of the complaint and requested that defendant provide a defense under the terms of their homeowners' policy. Defendant declined the tender on the ground that plaintiffs' claims were not covered by the policy.

Plaintiffs eventually settled their claims against Carol Purcell. Among other things, Carol Purcell assigned her rights against defendant. The record does not disclose the disposition of the claims against David Purcell.

Plaintiffs then initiated this action against defendant for breach of contract for failure to provide a defense or to indemnify Carol Purcell in the underlying action against her for negligence and reckless infliction of emotional distress. Defendant moved for summary judgment, arguing that, among other things, the policy unambiguously excluded plaintiffs' claims because they arise out of sexual molestation. Plaintiffs also moved for summary judgment, arguing that, as a matter of law, defendant is obligated to provide coverage because the exclusion for sexual molestation does not **\*230** unambiguously apply. According to plaintiffs, the exclusion applies only to sexual molestation committed by the insured, Carol Purcell. Because the sexual molestation at issue in the underlying case was

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

97 P.3d 1206
195 Or.App. 226, 97 P.3d 1206
**(Cite as: 195 Or.App. 226, 97 P.3d 1206)**

committed by David Purcell, plaintiffs argued, the exclusion does not apply to Carol Purcell. Defendant argued that the policy simply does not say what plaintiffs assert. The trial court agreed and granted defendant's**1208 motion, denied plaintiffs' motion, and entered judgment dismissing the complaint.

On appeal, plaintiffs argue that the trial court erred in granting defendant's motion for summary judgment and in denying their own motion. They argue that the policy unambiguously requires coverage. Specifically, they argue that, because the policy contains a severability provision declaring that the policy applies separately to David and Carol Purcell, the exclusion for bodily injury claims "[a]rising out of sexual molestation" must refer to claims for sexual molestation committed only by each individual insured. As a result, they assert, the exclusion for claims "[a]rising out of sexual molestation" must be understood in this case to apply only to claims arising out of sexual molestation committed by the insured, that is, Carol Purcell. Because the underlying tort claims do not involve sexual molestation committed by Carol Purcell, they conclude, the exclusion does not apply. According to plaintiffs, because of the severability clause, the fact that the sexual molestation was committed by another insured is irrelevant.

Defendant argues that the exclusion unambiguously applies to sexual molestation, whether committed by Carol Purcell or anyone else. Defendant observes that, when it wished to qualify an exclusion by referring only to an act of an insured, it plainly said so in the policy, as evidenced by the many exclusions that expressly apply to acts committed by, or on the premises of, "an insured." According to defendant, plaintiffs' reading of the exclusion inserts wording that intentionally was left out. The severability clause, defendant contends, means merely what it says-that is, that the insurance "applies separately to each insured." That clause does not alter the fact that the insurance that applies separately to each insured contains an exclusion for

claims arising out of *231 sexual molestation, without any limitation as to who committed it.

Resolution of this appeal thus turns on a question of law, the interpretation of an insurance policy. In *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or. 464, 836 P.2d 703 (1992), the Supreme Court explained the interpretive method that applies to the construction of insurance policies. Our objective is to determine what the parties intended the policy to cover. *Id.* at 469, 836 P.2d 703. That determination of intent is based on the terms and conditions expressed in the actual wording of the policy. *Id.* Only if the wording is ambiguous do we resort to rules of construction, such as the familiar canon that policies are construed against the insurer. *Id.* at 470, 836 P.2d 703. "Ambiguity," however, is something of a term of art. As the Supreme Court explained:

"For a term to be ambiguous in the sense that justifies resort to the foregoing rule, however, there needs to be more than a showing of two plausible interpretations[.] * * * [A] term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which the term is used in the policy and the broader context of the policy as a whole."

*Id.* (emphasis in original).

In this case, the policy contains an exclusion for bodily injury claims "[a]rising out of sexual molestation." The term "arise" ordinarily means "to originate from a specified source,"*Webster's Third New Int'l Dictionary* 117 (unabridged ed. 1993), or to "stem [or] result (from)," *Black's Law Dictionary* 102 (7th ed. 1999). Consistently with that ordinary meaning, the term "arising out of" as used in insurance policies generally is understood broadly to mean " ' flowing from' " or " 'having its origin in,' " thereby "indicating that there need be 'a' causal

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

connection, rather than a proximate causal connection." Lee R. Russ & Thomas F. Segalia, 7 *Couch on Insurance 3d* § 101:54 (1997). Indeed, the parties to this case do not appear to debate that plaintiffs' claim against Carol Purcell "aris[es] out of" sexual molestation. The debate *232 centers on whether the exclusion provision of the insurance policy must be understood to refer only to claims that arise out of sexual molestation *by the insured.*

**1209 The short answer to that debate is that the policy contains no wording that, reasonably construed, imposes such a limitation on the exclusion. The policy refers to claims arising out of sexual molestation without reference to any limitation as to who committed the act of molestation. Thus, the policy appears to state that the exclusion is based on the nature of the act, not the identity of the actor.

In strong support of that conclusion is the fact that the policy contains many other exclusions that expressly are predicated on the identity of the actor. The policy, for example, excludes bodily injury that is "expected or intended by the insured." It similarly excludes claims "[a]rising out of or in connection with a business engaged in by an insured." It excludes claims "[a]rising out of the rental or holding for rental of any part of any premises by an insured." It likewise excludes claims arising out of premises owned or rented "by an insured." And it excludes claims arising out of "the transmission of a communicable disease by an insured."

It is thus clear that, when an exclusion is intended to apply to an act committed by, or on the premises of, an insured, the policy expressly says so by referring to "the insured." In contrast to those exclusions, the one at issue in this case contains no such qualification. It states that bodily injury "[a]rising out of sexual molestation" is excluded, without any reference to the act of molestation having been committed "by an insured." FN1

> FN1. We observe from cases that have arisen in other jurisdictions that exclusions that expressly refer to sexual molestation

"by an insured" or "by any insured" are not uncommon. *See, e.g., Northwest G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179, 180 (N.D.1994) ("[T]he bodily injury and property damage coverage provided under this endorsement does not apply * * * to bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an insured, an insured's employee or any other person involved in any capacity in the day care enterprise [.]"); *American Family Mut. Ins. Co. v. Enright,* 334 Ill.App.3d 1026, 269 Ill.Dec. 597, 781 N.E.2d 394, 398 (2002), *app. den.,*203 Ill.2d 543, 273 Ill.Dec. 136, 788 N.E.2d 727 (2003) (exclusion for injury "arising out of sexual molestation * * * inflicted upon any person by or at the direction of an insured"); *Gallegos v. Allstate,* 372 Md. 748, 816 A.2d 102, 104 (2003) (exclusion for injuries "arising out of sexual molestation * * * inflicted by or at the direction of an insured or an employee of the insured").

*233 Plaintiffs urge us to read the exclusion as if it stated that it applied to bodily injury "arising out of sexual molestation *committed by the insured.*" To do that, however, we would have to insert wording into the policy that, from all indications, was consciously omitted. *See*ORS 42.230 (in the construction of written instruments, courts must not "insert what has been omitted"). As the Supreme Court has instructed, in construing the terms of an insurance policy, we are to give the wording of the policy its natural meaning and not attribute "unlikely meanings to the terms employed without some basis in the policy for doing so." *Western Fire Insurance Co. v. Wallis,* 289 Or. 303, 308, 613 P.2d 36 (1980).

Plaintiffs insist that, in this case, the severability provision of the policy provides just such a basis for effectively inserting the "missing" terms in the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

97 P.3d 1206
195 Or.App. 226, 97 P.3d 1206
(Cite as: 195 Or.App. 226, 97 P.3d 1206)

exclusion for bodily injury "[a]rising out of sexual molestation." As they did to the trial court, they argue to us that the import of the severability provision is that the policy must be understood to apply separately to each insured. Thus, they conclude, the reference to bodily injury "[a]rising out of sexual molestation" must be understood to refer to sexual molestation committed separately by each insured. In support of their argument, plaintiffs rely on three decisions from other jurisdictions: *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158 (1986); *American Nat. Fire Ins. v. Fournelle Est.*, 472 N.W.2d 292 (Minn.1991); and *United Servs. Auto. Ass'n v. DeValencia*, 190 Ariz. 436, 949 P.2d 525 (Ariz.Ct.App.1997).

We are unpersuaded. Even though the homeowners' policy applies separately to David and Carol Purcell, the fact remains that the policy that separately applies to them contains an exclusion for bodily injury "[a]rising out of sexual molestation." There is nothing in the wording of the severability provision itself that remotely suggests that it **1210 affects the substance of any provisions concerning coverage or exclusions.

The cases that plaintiffs cite are not to the contrary. In each one, the insurance policy at issue contained an exclusion that expressly referred to conduct of "an insured" or "any insured." The issue was whether the existence in the severability clause in each case had the effect of narrowing the *234 meaning of the reference to the "insured" so that the exclusion applied only to conduct of the insured claiming coverage and not to other insureds. *Worcester Mut. Ins. Co.*, 496 N.E.2d at 159-61; *American Nat. Fire Ins.*, 472 N.W.2d at 293-95; *United Servs. Auto. Ass'n*, 949 P.2d at 526-27. None of the cases even addressed the problem we confront in this case, that is, the effect of a severability clause on an exclusion that makes no reference to an insured at all.

Moreover, the decisions on which plaintiffs rely do not appear particularly well reasoned. Limiting an exclusion that, by its terms applies to "*an insured*"

or to "*any* insured" to one-and only one-insured would seem to conflict with its wording, which employs an indefinite article.[FN2] *See, e.g., Osborn v. PSRB*, 325 Or. 135, 143 n. 7, 934 P.2d 391 (1997) (drawing distinction between use of definite and indefinite articles). Interestingly, the Arizona Court of Appeals decision in *United Servs. Auto. Ass'n* was later distinguished by the same court on the ground that "any insured" is not restricted to a particular person. *American Family Mut. Ins. Co. v. White*, 204 Ariz. 500, 65 P.3d 449, 456-57 (App.Div.2003). And the other two decisions have been the subject of criticism from courts in other jurisdictions, which contend that limiting the effect of exclusions on the basis of severability clauses "ignores and does violence to the plain language of the insurance contract." *Johnson v. Allstate Ins. Co.*, 687 A.2d 642, 645 (Me.1997); *see also Allstate Ins. Co. v. Kim*, 121 F Supp 2d 1301, 1308 (D.Hawai'i 2000) (severability clause "clearly was intended to afford each insured a full measure of coverage up to the policy limits, not to negate the policy's intentional acts exclusion"); *Mutual of Enumclaw Ins. Co. v. Cross*, 103 Wash.App. 52, 62, 10 P.3d 440 (2000) ("clear and specific exclusion language in an exclusion prevails over a severability clause, *i.e.,* that an exclusion is not negated by or rendered ambiguous by a severability clause").[FN3]

> FN2. In fact, the court in *Worcester Mut. Ins. Co.* candidly acknowledged that its construction of the policy at issue in that case rendered the word "any" in the phrase "any insured" meaningless. 496 N.E.2d at 161. The court explained that it felt that it was necessary to do that to give fuller meaning to the severability provision. *Id.*

> FN3. Some courts have drawn a distinction between exclusions that refer to the conduct of "an insured" or "the insured" and those that refer to the conduct of "any insured." They reason that the use of the article "an" or "the" refers to the conduct of a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

single person, *i.e., the* insured, while the use of the article "any" indicates broader application to *all* insureds. *Compare California State Auto. Ass'n Inter-Ins. Bur. v. Warwick,* 17 Cal.3d 190, 130 Cal.Rptr. 520, 550 P.2d 1056-59 (1976) ("the term 'any insured' [in an exclusion] unmistakably refers to any person insured under the policy"), *and American Family v. Copeland-Williams,* 941 S.W.2d 625, 629 (Mo.Ct.App.1997) ("The use of the phrase 'any insured' makes the exclusionary clause unambiguous even in light of the severability clause."), *with Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810, 812 (Mo.1985) ("*the* insured," when coupled with a severability provision, makes the exclusion ambiguous and requires construction against the insurer), *and Catholic Diocese of Dodge City v. Raymer,* 16 Kan.App.2d 488, 825 P.2d 1144, 1151 (1992) ("*an* insured" coupled with a severability provision is ambiguous). As we have noted, in this case, there is no reference in the exclusion for bodily injury "[a]rising out of sexual misconduct" to conduct of any particular person at all.

**\*235** We conclude that the trial court correctly determined that the exclusion for bodily injury "[a]rising out of sexual molestation" applies and that the severability provision in the policy does not limit that exclusion to sexual molestation committed by the insured, Carol Purcell. The trial court therefore did not err in granting defendant's motion for summary judgment and in denying plaintiffs' motion.

Affirmed.

Or.App.,2004.
Ristine ex rel. Ristine v. Hartford Ins. Co. of Midwest
195 Or.App. 226, 97 P.3d 1206

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3.    <u>Taryn E.F. by Grunewald v. Joshua M.C.</u>, 178 Wis.2d 719, 505 N.W.2d 418
      (Wis. Ct. App. 1993).

Westlaw.

505 N.W.2d 418                                                                    Page 1
178 Wis.2d 719, 505 N.W.2d 418
(Cite as: 178 Wis.2d 719, 505 N.W.2d 418)

Court of Appeals of Wisconsin.
TARYN E.F., a minor by her Guardian ad Litem,
William A. GRUNEWALD, Dan F., and Dawn F.,
Plaintiffs-Appellants,
v.
JOSHUA M.C., a minor by his Guardian ad Litem
to be appointed by the court, Michael C., and
Beverly C., Defendants,
Little Black Mutual Insurance Company, Defend-
ant-Respondent.
No. 92-3204.

Submitted on Briefs July 19, 1993.
Opinion Released Aug. 3, 1993.
Opinion Filed Aug. 3, 1993.

Parents brought action for damages on behalf of
their sexually molested daughter against minor
babysitter, his parents, and their homeowner's in-
surer. The Circuit Court of Taylor County, Gary L.
Carlson, J., granted summary judgment for insurer,
and plaintiffs appealed. The Court of Appeals,
Myse, J., held that coverage for liability arising
from babysitter's acts was precluded based on con-
tract that expressly denied coverage if any insured
engages in intentional, wanton, malicious acts and
if liability directly or indirectly results from sexual
molestation.

Affirmed.

West Headnotes

**[1] Insurance 217 ☞1863**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1863 k. Questions of Law or Fact.
Most Cited Cases
    (Formerly 217k155.1)
Interpretation of insurance policy is question of law.

**[2] Insurance 217 ☞1808**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1808 k. Ambiguity in General. Most
Cited Cases
    (Formerly 217k146.1(2))
Court may not modify insurance policy's unambigu-
ous language.

**[3] Insurance 217 ☞1808**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1808 k. Ambiguity in General. Most
Cited Cases
    (Formerly 217k146.1(2))

**Insurance 217 ☞1863**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1863 k. Questions of Law or Fact.
Most Cited Cases
    (Formerly 217k155.1)
Insurance policy's language is ambiguous when it is
susceptible to more than one reasonable interpreta-
tion and whether policy's language is ambiguous is
question of law.

**[4] Insurance 217 ☞2278(3)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or In-
juries
                        217k2278(3) k. In General. Most
Cited Cases
    (Formerly 217k435.36(6))

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

505 N.W.2d 418
178 Wis.2d 719, 505 N.W.2d 418
**(Cite as: 178 Wis.2d 719, 505 N.W.2d 418)**

Severability clause did not create any ambiguity as to operation of intentional act exclusion in homeowner's insurance policy, which precluded coverage to all insureds for liability attributable to excludable acts of any one of insureds, though only one of insureds engaged in excludable conduct.

**[5] Insurance 217 ⬅2356**

217 Insurance
    217XVII Coverage--Liability Insurance
       217XVII(B) Coverage for Particular Liabilities
        217k2353 Homeowners' Liabilities
         217k2356 k. Particular Exclusions.
Most Cited Cases
    (Formerly 217k435.36(1))
Sexual molestation clause in homeowner's insurance policy applied to preclude coverage for parents, who were held statutorily liable for their minor son's tortious acts; contract expressly denied coverage for liability that directly or indirectly resulted from sexual molestation.
**\*\*419 \*720** For the plaintiffs-appellants the cause was submitted on the briefs of William A. Grunewald of Nikolay, Jensen, Scott, Gamoke & Grunewald, S.C., of Medford.

For the defendant-respondent the cause was submitted on the brief of Margaret J. Vergeront of La Follette & Sinykin of Madison.

Before CANE, P.J., and LaROCQUE and MYSE, JJ.

MYSE, Judge.

Taryn, Dawn and Dan F. (collectively, "Taryn") appeal the trial court's grant of summary **\*721** judgment to Little Black Mutual Insurance Company, the homeowner's insurer of Joshua, Michael and Beverly C. Taryn contends that the trial court erred by concluding that Little Black had no duty to defend and indemnify Michael and Beverly for liability imposed upon them under sec. 895.035, Stats.,

for the torts of their son Joshua. Taryn claims that because Michael and Beverly are innocent insureds who did not participate or encourage Joshua's acts, they are entitled to coverage despite the fact that coverage is precluded for Joshua, who is also an insured. She argues that Michael and Beverly have a separate insurance policy that provides coverage to them by virtue of the policy's severability clause. She further argues that the sexual molestation exclusion does not preclude coverage for Michael and Beverly's liability under sec. 895.035, Stats., because their liability under that statute is attributable to their status as parents and not necessarily to Joshua's acts of sexual molestation. Because we conclude that the exclusionary clauses unambiguously preclude coverage for Michael and Beverly's liability for Joshua's tortious acts, the summary judgment is affirmed.

The facts are undisputed. In June and October 1990, Taryn's parents hired Joshua, who was then twelve years old, to babysit for three-year-old Taryn and her brother. On both occasions, Joshua committed various sexual assaults and physical batteries to Taryn. Taryn's parents filed a complaint against Joshua and his parents, seeking damages for Joshua's torts under sec. 895.035, Stats. The complaint was later amended to include Michael and Beverly's homeowner's insurance carrier, Little Black. The complaint alleged that Joshua's acts were intentional, willful, malicious and wanton. Little Black moved the trial **\*722** court for summary judgment dismissing it from the action, **\*\*420** based upon its contentions that coverage is precluded by exclusions in its policy for liability resulting from any insured's intentional, wanton malicious acts and for liability directly or indirectly resulting from sexual molestation. The trial court found that (1) Joshua is an insured within the policy's definition, (2) his acts as alleged by the complaint fall within the intentional acts and sexual molestation exclusions, (3) the policy language is unambiguous, (4) Michael and Beverly are innocent insureds and (5) the exclusions in the policy preclude coverage for "any insured," which avoids the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

severability of interests issue found in *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis.2d 245, 400 N.W.2d 33 (Ct.App.1986). Based on these findings, the court concluded that Little Black had no duty to indemnify or defend Beverly and Michael for liability they incurred for Joshua's acts under sec. 895.035.

Summary judgment is appropriate because the facts are undisputed. Section 802.08(2), Stats. When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis.2d 304, 314-15, 401 N.W.2d 816, 820 (1987). Because that methodology is familiar, we need not repeat it here. *See id.*

[1][2][3] Interpretation of an insurance policy is a question of law. *Keane v. Auto-Owners Ins. Co.,* 159 Wis.2d 539, 547, 464 N.W.2d 830, 833 (1991). We may not modify an insurance policy's unambiguous language. *Schroeder v. Blue Cross & Blue Shield,* 153 Wis.2d 165, 173, 450 N.W.2d 470, 473 (Ct.App.1989). A policy's language is ambiguous when it is susceptible to more than one reasonable interpretation and whether a policy's *723 language is ambiguous is a question of law. *Id.* at 174, 450 N.W.2d at 473. We review questions of law independently of the trial court's determinations. *Ball v. District No. 4 Area Bd.,* 117 Wis.2d 529, 537, 345 N.W.2d 389, 394 (1984).

Little Black's policy defines "insured" as *"you* and, if residents of *your* household, *your* relatives and any other person under the age of 21 in *your* care or in the care of *your* resident relatives." (Emphasis in original.) Thus, under the unambiguous language of the policy, Joshua, as well as Michael and Beverly, is an insured. The policy also contains the following coverage exclusions:

INTENTIONAL ACT EXCLUSION

....

The insurance afforded by this policy shall not apply to any damages to property or for bodily injury attributable to a willful, malicious, wanton or otherwise intentional act of the "insured" or performed at an "insured's" direction or for any outrageous conduct on the part of any "insured" consisting of any intentional, wanton, malicious acts, or, in addition, any act that would constitute wanton disregard for the rights of others.

....

Sexual Molestation Exclusion

This policy does not apply to liability which results directly or indirectly from the actual, alleged or threatened sexual molestation of a person.

Taryn does not dispute that the exclusions preclude coverage for Joshua himself. However, Taryn argues that Michael, Beverly and Joshua each have a separate policy of insurance by virtue of the following provision in the policy: "Each person listed above is a *724 separate *insured* under this policy, but this does not increase *our* limit of liability under this policy." (Emphasis in original.) Thus, Taryn argues, because Michael and Beverly did not commit or encourage Joshua's commission of the excluded acts, they are entitled to coverage for their liability under sec. 895.035, Stats., under their separate policy. Taryn's argument hinges on her conclusion that the policy becomes ambiguous when this "severability clause" is read in conjunction with the exclusionary clauses. She cites our decision in *Nemetz,* 135 Wis.2d 245, 400 N.W.2d 33, in support of her conclusion. We disagree.

[4] Assuming, without deciding, that the severability clause creates separate policies for each insured, that clause does not render the exclusionary clauses in the policy ambiguous. The intentional acts exclusion expressly states that "[t]he insurance afforded by this policy shall not apply to *any damages...attributable to...* any outrageous conduct on the part of *any* 'insured' consisting of **421 any intentional, wanton, malicious acts...." (Emphasis supplied.) This language unambiguously denies coverage for all liability incurred by each and any insured as a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

505 N.W.2d 418
178 Wis.2d 719, 505 N.W.2d 418
**(Cite as: 178 Wis.2d 719, 505 N.W.2d 418)**

Page 4

result of certain conduct by any of the persons insured by the policy.

In contrast, the policies in *Nemetz,* 135 Wis.2d at 253-54 n. 2, 400 N.W.2d at 37 n. 2, excluded coverage for damages "expected or intended by *an* insured person" and damages "intended or expected by *the* insured." We noted in *Nemetz* that by using the terms "*an* insured," and "*the* insured" in their exclusionary provisions, the insurers failed to adequately draft the policy to exclude coverage for both insureds based on the excludable acts of one insured. *Id.* at 256, 400 N.W.2d at 38. Thus, we held that the exclusionary clauses precluded coverage for the insured who committed*725 the excludable acts, but not for the innocent insured. *Id.* Here, the exclusionary clause precludes coverage under the policy based on the excludable acts of *any* insured. Even when read with the severability clause, this exclusion unambiguously operates to preclude coverage to all insureds for liability attributable to the excludable acts of any one of the insureds. Unlike the insurers in *Nemetz,* Little Black drafted its policy more carefully to exclude this risk.

Taryn argues that "[t]here is no logical or grammatical difference between 'an' and 'any'." We disagree. "An" is an indefinite article used before nouns beginning with a vowel or, sometimes, a soft consonant (e.g. an herb) instead of the related indefinite article "a." WEBSTER'S THIRD NEW INT'L DICTIONARY 75 (Unabr.1976). "A" is "used as a function word before most singular nouns [or] to suggest limitation in number...." FN1 WEBSTER'S THIRD NEW INT'L DICTIONARY at 1. "The articles (*a, an, the* ) may be classed as adjectives because they possess limiting or specifying functions." HARRY SHAW, ERRORS IN ENGLISH AND WAYS TO CORRECT THEM, 277 (1970). "Any" is defined as "one indifferently out of more than two: one or some indiscriminately of whatever kind ... one, no matter what one: EVERY-used as a function word esp. in assertions and denials to indicate one that is selected without restriction or limitation of choice...." WEBSTER'S

THIRD NEW INT'L DICTIONARY at 97. Thus, the distinction between "an" and "any" is that the former refers to one object (an oak *726 tree) and the latter refers to one or more objects of a certain type (any person).

> FN1. In fact, this is how we interpreted "an" in *Nemetz* to arrive at the conclusion that the exclusionary clause in that case precluded coverage only to the particular insured who committed the excludable acts, and not the other insured. *Id.* at 256, 400 N.W.2d at 38.

Additionally, other jurisdictions have recognized this distinction between the terms "an" and "any" when used as descriptors in an insurance policy. The Colorado Supreme Court in *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 750 (1990), was faced with a clause excluding coverage for damage "expected or intended by *any* insured." (Emphasis added.) The court distinguished this policy from policies referring to the actions of *the* insured, noting that "[t]he majority of courts which have considered this issue have held that unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." *Id.* at 751 (citation and quotation omitted). The court declined to follow the minority of jurisdictions holding that "any insured" denies coverage only to the culpable party in favor of "consider[ing] and giv[ing] effect to all the policy provisions and recogniz [ing] that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein." *Id.* at 752. Indeed, one jurisdiction that reached the opposite result acknowledged that its interpretation rendered the word "any" superfluous. *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158, 161 (1986).

Other jurisdictions have denied recovery to the innocent co-insured where the exclusionary clause refers to acts of "any insured," noting that the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

505 N.W.2d 418
178 Wis.2d 719, 505 N.W.2d 418
**(Cite as: 178 Wis.2d 719, 505 N.W.2d 418)**

Page 5

phrase has been consistently interpreted as unambiguously expressing a contractual intent to create joint obligations and preclude recovery to innocent co-insureds. *727 *See, e.g., McCauley Enterprises v.* **422 *New Hampshire Ins. Co.,* 716 F.Supp. 718 (D.Conn.1989); *Travelers Ins. Co. v. Blanchard,* 431 So.2d 913 (La.Ct.App.1983); *State Farm Fire & Cas. Co. v. Wolford,* 116 A.D.2d 1011, 498 N.Y.S.2d 631 (1986); *Sales v. State Farm Fire & Cas. Co.,* 849 F.2d 1383 (11th Cir.1988). We find the reasoning in these cases persuasive and conclude that the term "any insured" unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct.

[5] Taryn next argues that the sexual molestation clause does not preclude coverage for Joshua's acts because Michael and Beverly's liability under sec. 895.035, Stats., is not liability that "results directly or indirectly from the actual, alleged or threatened sexual molestation of a person" because the liability is imposed by statute. We reject this argument as unconvincing. Michael and Beverly's statutory liability under sec. 895.035 is a direct result of their minor son's tortious acts, including his acts of sexual molestation. The fact that financial responsibility is created by statute based on Michael and Beverly's status as parents does not change the basis for liability, which is the damages resulting from Joshua's sexual molestations of Taryn. Under this insurance contract, coverage for liability resulting from Joshua's acts is precluded because the contract expressly denies coverage (1) if *any* insured engages in intentional, wanton, malicious acts and (2) if liability directly *or indirectly* results from a sexual molestation. We therefore conclude that the policy excludes coverage for Michael and Beverly's liability resulting from Joshua's tortious acts perpetrated against Taryn.

*728 Judgment affirmed.

Wis.App.,1993.
Taryn E.F. by Grunewald v. Joshua M.C.
178 Wis.2d 719, 505 N.W.2d 418

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

4.    <u>Flores v. AMCO Ins. Co.</u>, 2007 WL 3408255 (E.D. Cal., Nov. 15, 2007), aff'd 2009 WL 1096309 (9th Cir., 2009).

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Amanda FLORES, Plaintiff,
v.
AMCO INSURANCE COMPANY, Defendant.
**No. CV F 07-1183 LJO DLB.**

Nov. 15, 2007.

Ted R. Frame, Frame & Matsumoto, Coalinga, CA, for Plaintiff.

Rene Gamboa, Lewis, Brisbois, Bisgaard & Smith, LLP, San Francisco, CA, for Defendant.

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

LAWRENCE J. O'NEILL, District Judge.

### INTRODUCTION

**\*1** Defendant AMCO Insurance Company ("AMCO") seeks to dismiss plaintiff Amanda Flores' ("Ms. Flores' ") insurance coverage claims on grounds that the Ms. Flores' AMCO homeowners policy excludes coverage for a minor's claims against Ms. Flores arising from the minor's alleged sexual assault and rape after the minor became intoxicated at a party at Ms. Flores' home. Ms. Flores responds that the applicable sexual molestation exclusion is ambiguous and should be interpreted in favor of AMCO providing her a defense to the minor's claims. This Court considered AMCO's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the November 20, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES Ms. Flores' claims.

### BACKGROUND

#### Underlying Action

Ashton Crosswell ("Ms.Crosswell") pursues an underlying Kings County Superior Court action ("Crosswell action") against Ms. Flores and Ms. Flores husband, Daniel Flores, Sr. ("Mr.Flores"). In her operative complaint ("Crosswell complaint") in the Crosswell action, Ms. Crosswell alleges, in sum that on June 19, 2004, at age 15, she attended a birthday party for Mr. and Ms. Flores' daughter at their residence where she became intoxicated and was subjected to "unlawful, unwanted, nonconsensual, and damaging sexual encounters" with Mr. Flores, Daniel Flores, Jr. ("Daniel Jr."), Mr. and Ms. Flores' son, "other DOE Defendants" or "other intoxicated persons." The Crosswell complaint names as defendants Mr. and Ms. Flores and two other adults [FN1] and alleges negligence causes of action against Mr. and Ms. Flores and sexual assault and battery and rape causes of action against Mr. Flores.

> FN1. The Crosswell complaint refers to Mr. and Ms. Flores and the other two defendants as the "Adult Defendants." In reference to the Crosswell complaint, this Court will refer to the four adult defendants collectively in the Crosswell action as the "Adult Defendants."

#### Negligence Claims

The Crosswell complaint's (first) negligence cause of action alleges that the Adult Defendants provided Ms. Crosswell and other minors with alcohol or failed to supervise or failed to supervise them to permit the minors' alcohol consumption. The negligence cause of action alleges that:

1. During the evening of June 19, 2004 and into the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

early hours of June 20, 2004, Ms. Crosswell became visibly intoxicated and that the Adult Defendants failed to stop or prohibit Ms. Crosswell's alcohol consumption.

2. Ms. Crosswell's intoxication "was the direct and proximate cause of Plaintiff's uncharacteristic sexually promiscuous and/or provocative behavior" and that the Adult Defendants "were aware of and observed Plaintiff's intoxication and sexually provocative behavior with persons on the Premises, yet took no action to prevent or otherwise stop the same."

3. The Adult Defendants "knew of and could foresee the sexually violent and/or sexually assaultive propensities of Defendant DANIEL FLORES, SR., and minor Daniel Flores, Jr., when intoxicated and further knew of and could foresee the sexually assaultive propensities of other intoxicated persons."

4. Based on Ms. Crosswell and others' alcohol consumption and Ms. Crosswell's resulting intoxication and sexually provocative behavior, defendants could have reasonably foreseen that Ms. Crosswell "could be harmed, injured, or might be taken advantage of sexually by someone on the premises, including Defendant, FLORES, other Adult Defendants, Flores, Jr., or other intoxicated persons."

*2 5. "[N]egligence by Defendants ... resulted in unlawful, unwanted, nonconsensual, and damaging encounters between Plaintiff and Defendant, DANIEL FLORES, SR., Daniel Flores, Jr., and other DOE defendants."

The Crosswell complaint's (second) negligence per se, violation of Penal Code section 272 cause of action alleges that the Adult Defendants contributed "to the delinquency of a minor by allowing, authorizing, and providing alcohol to Plaintiff, a minor, and other minors" to violate California Penal Code section 272. The second cause of action further alleges that "Defendants and each of them were neg-

ligent and careless in their ownership, occupancy, activities, control and supervision of Plaintiff and others" and "said negligence by Defendants and each of them, resulted in unlawful, unwanted, nonconsensual, and damaging sexual encounters between Plaintiff and Defendant, DANIEL FLORES, SR., Daniel Flores, Jr., and other DOE defendants."

The Crosswell complaint's (third) negligence per se, violation of California Business & Professions Code section 25658 cause of action alleges that the Adult Defendants furnished Ms. Crosswell, Daniel Jr. and other minors alcohol to violate California Business & Professions Code sections 25658 and 25658.2. The third cause of action further alleges that Ms. Crosswell became intoxicated and had non-consensual sexual encounters with Mr. Flores, Daniel Jr. and other unknown DOE defendants.

The Crosswell complaint's (fourth) negligent supervision cause of action alleges that the Adult Defendants had observed and were aware of Ms. Crosswell's "intoxicated condition and sexually provocative behavior."The fourth cause of action further alleges that the Adult Defendants "negligently supervised the activities at the Premises,FN2 and, based upon the provision of alcohol to minors, including Plaintiff, and the negligent supervision of Plaintiff and others by Adult Defendants, Plaintiff was a victim of unconscious and/or nonconsensual sexual intercourse with minor Daniel Flores, Jr., and Defendant, DANIEL FLORES, SR., while intoxicated. As a further result of Adult Defendants['] negligent supervision, Plaintiff was subjected to unwanted and/or nonconsensual groping, or other sexual acts by other unknown DOE Defendants."

> FN2. The Crosswell complaint refers to Mr. and Ms. Flores' residence as the "Premises."

The Crosswell complaint's (fifth) negligent control of a minor cause of action alleges that the Adult Defendants "negligently failed to control minor

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

Daniel Flores, Jr., and other minor DOE Defendants."The fifth cause of action further alleges:

Adult Defendants had the ability to control and knew or should have known of the need and opportunity to exercise control over Daniel Flores, Jr., and other minor DOE Defendants as related to their interactions with Plaintiff and other females at the Premises. As a result of the negligent control by Adult Defendants ... Plaintiff was a victim of nonconsensual sexual activity and intercourse with minor Daniel Flores, Jr., and other unknown minor DOE Defendants, while in an intoxicated state.

### Sexual Assault And Battery And Rape Claims

*3 The Crosswell complaint's (sixth) sexual assault cause of action against Mr. Flores alleges that Mr. Flores "approached Plaintiff while she was lying semi-conscious and in an intoxicated state in the bed of [his] son Daniel Flores, Jr." and "made lewd and vulgar comments to Plaintiff, and stated his intention to have sexual intercourse with Plaintiff."

The Crosswell complaint's (seventh) sexual battery cause of action against Mr. Flores alleges that Mr. Flores "acted with intent to cause a harmful and/or offensive contact with the Plaintiff by use of his hands and penis, in that he touched Plaintiff's genitalia with his hands and penis, and a sexually offensive contact with Plaintiff resulted."The sexual battery cause of action further alleges that Ms. Crosswell was intoxicated and semi-conscious and was awakened by Mr. Flores "using his fingers to penetrate her" and he "proceeded to have sexual intercourse with her against her will."

The Crosswell complaint's (eighth) assault committed by forcible rape cause of action alleges that Mr. Flores entered the bedroom where Ms. Crosswell was in bed, semi-conscious from obvious intoxication and "made lewd and vulgar comments about Plaintiff and about Defendant, FLORES, SR.'s intent to have sexual intercourse with the minor

Plaintiff" to place Ms. Crosswell in great apprehension of great bodily harm and offensive contact.

The Crosswell complaint's (ninth) sexual battery by forcible rape cause of action alleges that after Mr. Flores threatened plaintiff with sexual contact, he used his fingers to penetrate Ms. Crosswell's vagina, turned her on her stomach on the bed, and engaged in nonconsensual sexual intercourse with Ms. Crosswell while she was intoxicated or semi-conscious.

Ms. Crosswell pursues damages for great mental, physical and nervous pain and suffering.

### AMCO's Homeowners Policy

AMCO issued a homeowners policy ("policy") to Mr. Flores and which was effective at the time giving rise to Ms. Crosswell's claims. Ms. Flores is an insured under the policy.

The policy provides "COVERAGE E-Personal Liability" as follows:

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" ... caused by an "occurrence" to which coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable ....; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent....

The policy defines "Bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results."For personal liability coverage, the policy defines "Occurrence" as "an accident ... which results, during the policy period, in ... '[b]odily injury.' "

The policy excludes from COVERAGE E-Personal Liability:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

1. Expected or Intended Injury

'Bodily injury" or "property damage" which is ex-
pected to intended by an "insured" even if the
resulting "bodily injury" ...

*4 a. Is of a different kind, quality or degree than
initially expected or intended; or

b. Is sustained by a different person than ... initially
expected or intended.

..

7. Sexual Molestation, Corporal Punishment Or
Physical Or Mental Abuse "Bodily injury" ...
arising out of any:

a. sexual activity or conduct,

b. corporal punishment, or

c. physical or mental abuse.

This exclusion applies whether or not any acts were
intentional or unintentional and whether or not
the acts were in violation of any criminal or penal
code or statute.[FN3]

> FN3. This exclusion No. 7 hereinafter will
> be referred to as the "sexual molestation
> exclusion."

The policy includes a severability of insurance
clause which provides: "The insurance applies sep-
arately to each 'insured.' This condition will not in-
crease our limit of liability for any one
'occurrence.' "

### Ms. Flores' Insurance Coverage Claims

After AMCO denied Ms. Flores' tender of defense
and indemnity of the Crosswell action, Ms. Flores
filed this action to allege a (first) breach of contract
cause of action that AMCO failed to defend and in-
demnify Ms. Flores to breach AMCO's policy ob-
ligations. Ms. Flores pursues a (second) breach of

the covenant of good faith and fair dealing cause of
action that AMCO unreasonably failed and refused
to investigate facts, evaluate claims, and defend and
indemnify Ms. Flores to compel her to retain coun-
sel. Ms. Flores also alleges a declaratory relief
cause of action to seek adjudication of her rights to
defense and indemnity under the policy.

### DISCUSSION

#### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

In short, AMCO seeks F.R.Civ.P. 12(b)(6) dis-
missal on grounds that the policy excludes coverage
for Ms. Crosswell's claims against Ms. Flores. A
F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge
to the sufficiency of the pleadings set forth in the
complaint. "When a federal court reviews the suffi-
ciency of a complaint, before the reception of any
evidence either by affidavit or admissions, its task
is necessarily a limited one. The issue is not wheth-
er a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the
claims."Scheurer v. Rhodes, 416 U.S. 232, 236, 94
S.Ct. 1683, 40 L.Ed.2d 90 (1974); Gilligan v.
Jamco Development Corp., 108 F.3d 246, 249 (9th
Cir.1997). A F.R.Civ.P. 12(b)(6) dismissal is prop-
er where there is either a "lack of a cognizable legal
theory" or "the absence of sufficient facts alleged
under a cognizable legal theory."Balisteri v. Paci-
fica Police Dept., 901 F.2d 696, 699 (9th Cir.1990);
Graehling v. Village of Lombard, Ill., 58 F.3d 295,
297 (7th Cir.1995).

In resolving a Rule 12(b)(6) motion, the court must:
(1) construe the complaint in the light most favor-
able to the plaintiff; (2) accept all well-pleaded fac-
tual allegations as true; and (3) determine whether
plaintiff can prove any set of facts to support a
claim that would merit relief. Cahill v. Liberty Mut.
Ins. Co., 80 F.3d 336, 337-338 (9th
Cir.1996)."However, conclusory allegations of law
and unwarranted inferences are not sufficient to de-
feat a motion to dismiss."Pareto v. F.D.I.C., 139

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

F.3d 696, 699 (9th Cir.1998). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts."*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir.1990).

**\*5** In a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.,* 290 F.Supp.2d 1158, 1162, n. 2 (C.D.Cal.2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle,* 290 F.Supp.2d at 1162, n. 2"Also, a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.' "*eCash Techs. Inc. v. Guagliardo,* 127 F.Supp.2d 1069, 1074 (C.D.Cal.2000) (quoting *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002)). As such, this Court may consider the policy although Ms. Flores did not attach it to her complaint.

### Policy Interpretation And Duties To Defend And Indemnify

Interpretation of an insurance policy is a question of law when determining whether a particular policy provides coverage and a duty to defend. *Waller v. Truck Ins. Exchange,* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995); *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 818, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990); *see Marquez Knolls Property Owners Assoc., Inc. v. Executive Risk Indemnity, Inc.,* 153 Cal.App.4th 228, 233-234, 62 Cal.Rptr.3d 510, 515-516 (2007) ("The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination.")."An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected."*National Ins. Underwriters v. Carter,* 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 551 P.2d 362 (1976) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.,* 46 Cal.2d 423, 432, 296 P.2d 801 (1956)). However, "the burden of bringing itself within any exculpatory clause contained in a policy is on the insurer."*Executive Aviation, Inc. v. National Ins. Underwriters,* 16 Cal.App.3d 799, 806, 94 Cal.Rptr. 347 (1971); *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 880, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978)."[E]xclusionary clauses are construed narrowly against the insurer."*Marquez Knolls,* 153 Cal.App.4th at 234, 62 Cal.Rptr.3d at 516.

An insurer has a duty to defend an insured if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under an insuring agreement. *Waller,* 11 Cal.4th at 19, 44 Cal.Rptr.2d 370, 900 P.2d 619. Although an insurer's duty to defend is broader than its duty to indemnify, "where there is no possibility of coverage, there is no duty to defend."*Fire Ins. Exchange v. Abbott,* 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988). Determination "whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."*Waller,* 11 Cal.4th at 19, 44 Cal.Rptr.2d 370, 900 P.2d 619;*see Montrose Chem. Corp. of Cal. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) ("The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source.")

**\*6** Although broad, the duty to defend is not unlimited and "is measured by the nature and kinds of risks covered by the policy."*Waller,* 11 Cal.4th at 19, 44 Cal.Rptr.2d 370, 900 P.2d 619. "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.*In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

prove it *cannot."Montrose Chemical,* 6 Cal.4th at 300, 24 Cal.Rptr. 467 (italics in original). An insurer "must defend a suit which potentially seeks damages within the coverage of the policy."*Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

In contrast to the duty to defend, the duty to indemnify "arises when the insured's underlying liability is established.... Although an insurer may have a duty to defend, it ultimately may have no obligation to indemnify, either because no damages were awarded in the underlying action against the insured, or because the actual judgment was for damages not covered under the policy."*Montrose Chemical Corp. of Cal. v. Admiral Ins. Co.,* 10 Cal.4th 645, 659, n. 9, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995).

With these standards in mind, this Court turns to whether the Crosswell action pleads facts to invoke policy coverage.

### Policy Coverage For The Crosswell Action

AMCO contends that the Crosswell action "establishes" that Ms. Flores potential liability arises from sexual activity and conduct of Mr. Flores, Daniel Jr. and other unknown minor Doe defendants. AMCO argues that policy's sexual molestation exclusion precludes coverage for sexual activity of persons other than Ms. Flores, an insured. AMCO further argues that although Ms. Flores' potential liability arises from failure to supervise those who engaged in "sexual activity or conduct," her potential liability derives from alleged bodily injury arising out of sexual activity or conduct.

AMCO relies on *Ristine v. Hartford Ins. Co. of the Midwest,* 195 Or.App. 226, 97 P.3d 1206 (2004), where the Oregon Court of Appeals held that a homeowners policy's similar exclusion precluded a co-insured wife's coverage for her husband's sexual molestation. In *Ristine,* a minor girl visited the

home of a husband and wife and was repeatedly molested by the husband. The minor, through her mother, sued the wife for negligent failure to disclose that the husband was a sex offender and to allow the minor alone with the husband.

The husband and wife's homeowners policy insurer denied a defense to the wife. The policy excluded coverage for bodily injury "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse."The policy's severability clause provided: "This insurance applies separately to each insured."The wife assigned her claims against the insurer, and the plaintiff assignees pursued insurance coverage claims against the insurer.

*7 On appeal from summary judgment in the insurer's favor, the plaintiffs argued that since the policy contains a severability clause, the sexual molestation exclusion refers to sexual molestation committed only by each individual insured. The plaintiffs further argued that the sexual molestation exclusion does not apply to the wife because the underlying claims against her did not involve sexual molestation. The insurer contended that the sexual molestation exclusion applies to sexual molestation, whether committed by the wife or anyone else.

Noting the issue was whether the exclusion refers "only to claims that arise out of sexual molestation *by the insured,"* the Oregon Court of Appeals concluded that the exclusion "is based on the nature of the act, not the identity of the actor."*Ristine,* 195 Or.App. at 232, 97 P.3d at 1208 (italics in original). The court noted that plaintiffs' interpretation to read the exclusion to apply to bodily injury arising out of sexual molestation *"committed by the insured"* requires addition of wording into the exclusion that "was consciously omitted." *Ristine,* 195 Or.App. at 233, 97 P.3d at 1209 (italics in original). The court determined that "the severability provision in the policy does not limit that exclusion to sexual molestation committed by the insured [wife]."*Ristine,* 195 Or.App. at 235, 97 P.3d at 1210.

AMCO argues that since its and *Ristine*'s sexual

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

molestation exclusions are similarly broad and severability provisions are identical, this Court should interpret the AMCO exclusion in the same manner as the *Ristine* court interpreted the sexual molestation exclusion before it.

Ms. Flores attempts to distinguish *Ristine* from this action in that:

1. In this action, molestation was committed by persons in addition to an insured;

2. The severability clause is not at issue in this action; and

3. The *Ristine* court applied Oregon law.

The AMCO policy's sexual molestation exclusion is keenly similar to the *Ristine* exclusion. The AMCO policy excludes "bodily injury" coverage arising from "sexual activity or conduct," "corporal punishment," or "physical or mental abuse." There is no meaningful dispute that the Crosswell complaint alleges as to Mr. Flores, Daniel Jr. and unknown Doe defendants sexual activity or conduct subject to the exclusion. Turning to policy's severability provision, it states: "This insurance applies separately to each 'insured.' " The AMCO policy applies separately to Mr. and Mrs. Flores and contains a global sexual molestation exclusion which is not limited to an insured's conduct. As such, the exclusion applies to Ms. Flores, despite that she is not an alleged active participant in the sexual activity at issue here. In other words, neither the AMCO policy's sexual molestation exclusion nor its severability provision limit the sexual molestation exclusion's scope to sexual conduct committed by Ms. Flores, an insured. Ms. Flores' attempts to distinguish *Ristine* are unavailing and unsupported.

### *Ambiguity Of The Sexual Molestation Exclusion*

**\*8** Ms. Flores argues that the sexual molestation exclusion is ambiguous because it fails expressly to exclude acts "by anyone." As a reminder, the sexual molestation exclusion excludes "sexual activity

or conduct" without reference to whom commits such action. Ms. Flores points out that other nearby exclusions reference: (1) "communicable disease by an '**insured**,'; (2) "the use, sale, manufacture, delivery, transfer or possession by **any person** of a Controlled Substance"; and (3) "**any insured or others** test for, monitor, clean up ... the effects of 'pollutants' ". (Bold added.) Ms. Flores contends that the sexual molestation exclusion's ambiguity in context with other exclusions requires narrow construction in Ms. Flores' favor.

A policy provision is ambiguous when it is capable of two or more reasonable constructions. *Waller,* 11 Cal.4th at 18, 44 Cal.Rptr.2d at 370, 900 P.2d 619;*Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Ins. Co.,* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993). Contract language must be interpreted as a whole, and in the case's circumstances, and cannot be found ambiguous in the abstract. *Waller,* 11 Cal.4th at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619;*Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Courts will not strain to create an ambiguity where none exists. *Waller,* 11 Cal.4th at 18-44 Cal.Rptr.2d 370;*Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982)."If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."Cal. Civil Code, § 1649. "This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'Only if this rule does not resolve the ambiguity do we then resolve it against the insurer."*Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.

The sexual molestation exclusion is not ambiguous because it lacks reference to whom commits "sexual activity or conduct." The absence of such reference reflects that the sexual molestation exclusion applies to anyone (insured or not) who engages

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)
(Cite as: 2007 WL 3408255 (E.D.Cal.))

Page 8

in such conduct. This Court agrees with the *Ristine* court that the sexual molestation exclusion is not based on the identity of the actor. Even construed narrowly against AMCO, the sexual molestation exclusion is not subject to two or more reasonable interpretations. Ms. Flores asks this Court to strain to find an ambiguity where none exists. In the absence of ambiguity, this Court must respect AMCO's exclusion.

In addition, Ms. Flores relies on *St. Paul Fire & Marine Ins. Co. v. Schrum,* 149 F.3d 878 (8th Cir.1998), which this Court finds unpersuasive.*Schrum* addressed a similar sexual molestation exclusion but the Eighth Circuit Court of Appeals specifically passed on the issue of the exclusion's ambiguity and steered its focus from "a sexual act committed by a third person."*Schrum,* 149 F.3d at 880. Moreover, other courts have failed to adopt *Schrum*'s strained application. *See Allstate Ins. Co. v. Bates,* 185 F.Supp.2d 607, 613 (E.D.N.C.2000) ("Without the molestation there would be no injury and thus, no basis for the negligence claim. Therefore, this Court explicitly rejects the conclusion reached by the Eighth Circuit in *Schrum.*") Again, the basis for Ms. Crosswell's negligence claims against Ms. Flores is alleged molestation of Ms. Crosswell to invoke application of the unambiguous sexual molestation exclusion.

### Absence Of Bad Faith And Declaratory Relief Claims

**\*9** AMCO argues that in the absence of a duty to defend Ms. Flores and in turn a breach of the policy, Ms. Flores' breach of contract, breach of covenant of good faith and fair dealing and declaratory relief causes of action fail. Ms. Flores does not challenge that the absence of a duty to defend dooms her claims.

The primary test of breach of the implied covenant of good faith and fair dealing "is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith."*Love v. Fire Ins. Ex-*

*change,* 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990). If benefits are withheld for "proper cause," the implied covenant is not breached. *Love,* 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246;*Cal. Shoppers Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 54-55, 221 Cal.Rptr. 171 (1985). To establish breach of the implied covenant, an insured must demonstrate that: (1) benefits due under the policy were withheld; and (2) the reason to withhold benefits was unreasonable or improper. *Love,* 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246;*see also Cal. State Auto. Assn. Inter-Ins. Bureau v. Superior Court,* 184 Cal.App.3d 1428, 1433, 229 Cal.Rptr. 409 (1986) (no bad faith award available "without first establishing coverage exists").

AMCO is correct. In the absence of its duty to defend, AMCO neither breached the policy nor unreasonably withheld policy benefits. No further issues remain for declaratory relief.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES this action; and

2. DIRECTS the clerk to enter judgment in favor of defendant AMCO Insurance Company and against plaintiff Amanda Flores and to close this action.

IT IS SO ORDERED.

E.D.Cal.,2007.
Flores v. AMCO Ins. Co.
Not Reported in F.Supp.2d, 2007 WL 3408255 (E.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5.    <u>Hingham v. Mutual Fire Ins. Co.</u>, 69 Mass. App. Ct. 1, 865 N.E.2d 1168
      (2007)

Westlaw.

865 N.E.2d 1168
69 Mass.App.Ct. 1, 865 N.E.2d 1168
(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)

Page 1

Appeals Court of Massachusetts,
Middlesex.
HINGHAM MUTUAL FIRE INSURANCE COM-
PANY
v.
Ellen SMITH[FN1,FN2] & others.[FN3]

FN1. We use pseudonyms for all of the in-
dividual parties.

FN2. Individually and as parent and next
friend of Ann Smith and Michael Smith.

FN3. John Smith, individually and as par-
ent and next friend of Ann Smith and Mi-
chael Smith; Karen Allen and Frank Allen,
individually and as parents and next
friends of Thomas Allen; and Thomas Al-
len.

No. 05-P-1769.

Argued Sept. 21, 2006.
Decided May 10, 2007.

**Background:** Homeowners insurance company
brought action for declaratory judgment that it did
not have a duty to defend or indemnify homeown-
ers or their son in action by sexual abuse victim's
family for damages sustained as a result of son's al-
leged sexual abuse of victim. The Superior Court
Department, Middlesex County, Wendie I. Ger-
shengorn, J., granted insurance company's motion
for summary judgment, and homeowners appealed.

**Holdings:** The Appeals Court, Vuono, J., held that:
(1) insurance policy's personal liability section's
bodily injury section excluded coverage for claims
arising out of sexual molestation;
(2) personal liability section precluded coverage for
loss of consortium claim;
(3) personal liability section precluded coverage for
negligent supervision claim;
(4) claim for intentional infliction of emotional dis-

tress was not exclusive of the molestation and thus
was precluded by personal liability section; and
(5) policy's severability clause did not provide cov-
erage for homeowners.

Affirmed.

West Headnotes

**[1] Insurance 217 ⟵2278(6)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or In-
juries
                        217k2278(6) k. Sexual Acts or
Abuse. Most Cited Cases
Homeowners insurance policy's personal liability
section, which provided coverage for bodily injury
but stated that bodily injury did not include harm
arising out of "the actual, alleged or threatened
sexual molestation of a person," precluded cover-
age for homeowners in connection with action by
family of victim who was allegedly abused by
homeowners' son.

**[2] Insurance 217 ⟵2103(1)**

217 Insurance
    217XV Coverage--in General
        217k2096 Risks Covered and Exclusions
            217k2103 Proximate Cause
                217k2103(1) k. In General. Most Cited
Cases
The phrase "arising out of," as used in an insurance
policy, must be read expansively, incorporating a
greater range of causation than that encompassed
by proximate cause under tort law.

**[3] Insurance 217 ⟵2278(6)**

217 Insurance

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

865 N.E.2d 1168
69 Mass.App.Ct. 1, 865 N.E.2d 1168
**(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)**

217XVII Coverage--Liability Insurance
    217XVII(A) In General
        217k2273 Risks and Losses
            217k2278 Common Exclusions
                217k2278(2) Intentional Acts or Injuries
                217k2278(6) k. Sexual Acts or Abuse. Most Cited Cases
Homeowners insurance policy's personal liability section, which provided coverage for bodily injury but stated that bodily injury did not include harm arising out of "the actual, alleged or threatened sexual molestation of a person," precluded coverage for homeowners for loss of consortium claims brought against homeowners by family of victim who was allegedly abused by homeowners' son, as claims arose out of underlying sexual molestation that was excluded under the personal liability section.

**[4] Insurance 217 ☞2098**

217 Insurance
    217XV Coverage--in General
        217k2096 Risks Covered and Exclusions
            217k2098 k. Exclusions and Limitations in General. Most Cited Cases
Words in exclusionary clauses of insurance contracts should be construed in their usual and ordinary sense.

**[5] Insurance 217 ☞2278(6)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or Injuries
                217k2278(6) k. Sexual Acts or Abuse. Most Cited Cases
Homeowners insurance policy's exclusion for bodily injury arising out of sexual molestation precluded coverage for homeowners in connection with negligent supervision claim brought by family

of victim sexually molested by homeowners' son, as family alleged no separate, independently caused bodily injuries causally related to homeowners' alleged negligent supervision but rather alleged injuries resulting from a confluence of son's alleged sexual assaults and homeowners' alleged misrepresentations regarding son's "deviant sexual activity."

**[6] Insurance 217 ☞2278(6)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2273 Risks and Losses
                217k2278 Common Exclusions
                    217k2278(2) Intentional Acts or Injuries
                217k2278(6) k. Sexual Acts or Abuse. Most Cited Cases

**Insurance 217 ☞2307**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(B) Coverage for Particular Liabilities
            217k2306 Personal Injury
                217k2307 k. In General. Most Cited Cases
Claim for intentional infliction of emotional distress brought by sexual abuse victim's family against abuser's family was not exclusive of the molestation, as without the alleged molestation there would have been no basis for the lawsuit, and thus homeowners insurance policy's exclusion for bodily injury arising out of sexual molestation precluded insurance coverage for abuser's family in connection with the emotional distress claim, despite claim by abuser's family that emotional distress claim arose out of alleged misrepresentation that the molestation "would not take place again" such that the claim was included under insurance policy's coverage for "personal injury," which included misrepresentation.

**[7] Insurance 217 ☞2278(6)**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

865 N.E.2d 1168
69 Mass.App.Ct. 1, 865 N.E.2d 1168
(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)

217 Insurance
 217XVII Coverage--Liability Insurance
  217XVII(A) In General
   217k2273 Risks and Losses
    217k2278 Common Exclusions
     217k2278(2) Intentional Acts or In-
juries
     217k2278(6) k. Sexual Acts or
Abuse. Most Cited Cases
Severability clause in homeowners insurance
policy's personal umbrella liability endorsement,
which provided that insurance under the endorse-
ment applied separately to each insured but that in-
cluding more than one insured would not increase
the insurer's limit of liability, did not provide cov-
erage for homeowners in connection with claims by
family of victim allegedly sexually molested by
homeowners' son; endorsement also stated that in-
surance did not apply to bodily injury or personal
injury arising out of sexual molestation, corporal
punishment or physical or mental abuse.
**1170 David J. Hart, Lowell, for Karen Allen &
another.

Ethan Warren, Boston, for the plaintiff.

Present: GELINAS, BROWN, & VUONO, JJ.

VUONO, J.

*2 Hingham Mutual Fire Insurance Company
(Hingham) sought a judgment in the Superior Court
declaring that it did not have a duty to defend or in-
demnify Karen and Frank Allen, or their minor son,
Thomas (the Allens), in an action brought against
them by Ellen and John Smith on behalf of them-
selves and their minor children, Ann and Michael
(the Smiths), for damages sustained as a result of
alleged sexual abuse of Ann and Michael by
Thomas. Karen and Frank Allen appeal [FN4] from a
summary judgment generally declaring that Hing-
ham had no duty to defend or indemnify them un-
der any provision in the homeowner's insurance
policy issued to them by Hingham-neither the pro-

vision for basic liability coverage, nor any applic-
able endorsements to the policy. We affirm.

  FN4. The parties have stipulated to the dis-
  missal of Thomas Allen's appeal.

*Background.* The factual and procedural back-
ground of the case may be summarized as follows.
In 2003, the Smiths sued the Allens, alleging that
Thomas sexually molested the Smith children on
numerous occasions between May 27, 2000, and
December 13, 2001. The underlying complaint con-
tained four counts: count I, indecent assault and
battery brought on behalf of Ann and Michael
against Thomas only; count II, loss of *3 consorti-
um by Ellen and John Smith against Thomas and
his parents; count III, intentional infliction of emo-
tional distress brought on behalf of all plaintiffs
against all defendants; and count IV, negligence
brought on behalf of all plaintiffs against Karen and
Frank Allen. The Allens were insured under a
homeowner's policy issued by Hingham during the
period that the Smiths claim the sexual molestation
occurred. Hingham provided the Allens with a de-
fense of the underlying suit pursuant to a reserva-
tion of rights, and brought this declaratory judg-
ment action.[FN5]

  FN5. While this appeal was pending, the
  underlying lawsuit was tried to a jury. In
  answer to special questions, the jury found
  for the Smiths on count I of their com-
  plaint, and for the Allens on the remaining
  counts.

On appeal, the Allens no longer contend that there
is any coverage from any source for the indecent
assault and battery claims asserted in count I or for
any of the other counts to the extent that they seek
damages from Thomas. See note 3, *supra.* What re-
mains in dispute is whether there is coverage for
the claims of loss of consortium, negligence, and
intentional infliction of emotional distress that have
been asserted by various Smith plaintiffs against
Thomas's parents, Karen and Frank Allen, under (1)
the basic homeowner's liability coverage contained

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

865 N.E.2d 1168                                                      Page 4
69 Mass.App.Ct. 1, 865 N.E.2d 1168
**(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)**

in "Coverage L" of the homeowner's policy; (2) the endorsement that extends Coverage L to personal injury claims due to misrepresentation; or (3) the severability clause in the personal umbrella liability endorsement.

[1] *Discussion.* 1. *Bodily injury exclusion.* We begin by considering the basic homeowner's liability coverage. The relevant policy provisions are as follows:

'Coverage L-Personal Liability-We pay, up to our limit, all sums for which an insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily **1171 injury or property damage not excluded under this coverage."

The definition section of the policy defines "bodily injury" as follows:
*4 "Bodily injury means bodily harm to a person and includes sickness, disease or death. This also includes required care and loss of services.

'Bodily injury does not mean bodily harm, sickness, disease or death that arises out of:

ı. a communicable disease; or

). the actual, alleged or threatened sexual molestation of a person."

The policy also defines "occurrence" as "an accident ... includ[ing] loss from repeated exposure to similar conditions." In addition, the policy excludes coverage for "bodily injury or property damage which results directly or indirectly from: ... an intentional act of an insured or an act done at the direction of an insured."

We agree with the motion judge that there is no coverage under the personal liability section (Coverage L) of the homeowner's policy if only because the injuries alleged by the Smiths "arise[ ] out of ... the actual, alleged or threatened sexual

molestation of a person" and thus do not constitute "bodily injur[ies]" as defined by the policy.

[2] Even when used in exclusionary language, the term "arising out of" has been given a broad construction by our cases. "The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law.... Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Bagley v. Monticello Ins. Co.,* 430 Mass. 454, 457, 720 N.E.2d 813 (1999). See *id.* at 455, 720 N.E.2d 813 (insurance policy's illegal acts exclusion barred coverage for judgment awarded in negligence action for injuries resulting from brutal rape). See also *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.,* 40 Mass.App.Ct. 722, 723, 727, 667 N.E.2d 295 (1996) (policy exclusion for personal injury claims "arising out of ... discrimination which is unlawful" barred coverage for injuries *5 alleged in claims for negligence, misrepresentation, and loss of consortium arising out of underlying discriminatory acts); *Metropolitan Property & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.,* 58 Mass.App.Ct. 818, 820-821, 793 N.E.2d 1252 (2003) (no duty to defend or indemnify insured under homeowner's policy where injuries allegedly inflicted by insured on coworker occurred at her place of employment and policy excluded coverage for losses arising out of or in connection with insured's business activities).

[3] a. *Loss of consortium.* The Allens contend that the loss of consortium claims raised in the complaint are not excluded under the policy because bodily injury claims for "required care and loss of services" are treated differently than bodily injury claims from "sickness, disease or death." That claim fails for the same reasons.

[4] As discussed in *New England Mut. Life Ins. Co.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*v. Liberty Mut. Ins. Co.,* 40 Mass.App.Ct. at 727, 667 N.E.2d 295, claims for loss of consortium that "arise out of" the underlying sexual molestation are "derived from the alleged [conduct].... [W]e fail to see how they survive the exclusionary clause. It is the source from which the plaintiff[s'] personal injury originates rather than the specific theories of liability alleged ... which determines the insurer's duty to defend." Any claims **1172 for loss of consortium are excluded from coverage under the basic personal liability policy.[FN6] See *American Commerce Ins. Co. v. Porto,* 811 A.2d 1185, 1199 (R.I.2002) (construing identical policy exclusion for sexual molestation, and finding no coverage for negligent supervision and loss of consortium).

> FN6. Moreover, that the phrase "required care and loss of services" appears only in the definition section of the policy and is not repeated in the exclusionary clause immediately following the definition is of no import. It is well established that "[w]ords in exclusionary clauses of insurance contracts should be construed 'in their usual and ordinary sense.' " *Bagley v. Monticello Ins. Co.,* 430 Mass. at 457, 720 N.E.2d 813, quoting from *Liquor Liab. Joint Underwriting Assn. of Mass. v. Hermitage Ins. Co.,* 419 Mass. 316, 320, 644 N.E.2d 964 (1995). Here, the language relied upon by the Allens, when read in its "usual and ordinary sense," does not suggest that the exclusion applies only to those claims for bodily injury relating to "sickness, disease or death." To adopt the interpretation advocated by the Allens would distort the plain meaning of the clause and is contrary to what an "objectively reasonable insured, reading the relevant policy language, would expect to be covered." *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.,* 40 Mass.App.Ct. at 724, 667 N.E.2d 295, quoting from *Hazen Paper Co. v. United States Fid. & Guar. Co.,* 407 Mass. 689, 700, 555 N.E.2d 576 (1990).

[5] *6 b. *Negligent supervision.* The Allens' assertion that Hingham has a duty to defend them against the Smiths' negligent supervision claim is similarly unavailing. The Allens argue that negligent supervision is a separate claim that does not arise from Thomas's alleged sexual molestation but, rather, from their failure to properly supervise Thomas. However, the Smiths alleged no separate, independently caused bodily injuries causally related to the Allens' alleged negligent supervision. Rather, they alleged injuries resulting from a confluence of Thomas's alleged sexual assaults and the Allens' alleged misrepresentations regarding Thomas's "deviant sexual activity." The complaint then alleged that Karen and Frank's negligence was a contributing or additional proximate cause of these injuries. But while the alleged cause of the injuries is different, the bodily injuries allegedly suffered by the Smith children are the same. See *American Commerce Ins. Co. v. Porto,* 811 A.2d at 1199. Thus, the policy's exclusion for bodily injury "aris[ing] out of ... sexual molestation" precludes coverage.

[6] 2. *Misrepresentation.* The Allens argue that Hingham has a duty to defend them against the Smiths' claim for intentional infliction of emotional distress because the policy's personal injury endorsement extends Coverage L to include coverage for "personal injury," defined as, inter alia, "damages for which an insured is legally liable caused by ... misrepresentation." [FN7] The Allens assert that the Smiths' claim for intentional infliction of emotional distress is based on the allegations that the Allens lied when they represented that Thomas was in counselling and falsely assured the Smiths that the sexual molestation "would not take place again." The Allens claim that the Smiths' allegations of emotional distress derive from these representations, and assert that the representations allegedly made to the Smiths regarding Thomas's behavior and counselling fall squarely within this policy endorsement.

> FN7. We look to the facts alleged in the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

865 N.E.2d 1168
69 Mass.App.Ct. 1, 865 N.E.2d 1168
(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)

underlying complaint, not to theories of liability asserted by the Smiths, to determine whether Hingham has a duty to defend the Allens in the underlying action. See *Bagley v. Monticello Ins. Co.,* 430 Mass. at 458, 720 N.E.2d 813.

Although the insurance policy construed in *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., supra,* was not a homeowner's*7 liability policy, the parties point to nothing to establish that the rule **1173 construing the policy language in that case is not equally applicable to the facts of this case.[FN8] Thus, the allegations in the Smiths' complaint that amount to misrepresentation are not exclusive of the alleged sexual molestation since without the alleged underlying sexual molestation, there would not have been any alleged personal injuries and no basis for the lawsuit. See *id.* at 727, 667 N.E.2d 295.

> FN8. Even were we to further consider the Allens' argument here, it would fail under the facts of this case. The personal injury endorsement at issue also contains an exclusion that states in pertinent part:
>
> "This insurance does not apply to personal injury: ... caused by a publication or statement made by, at the direction of, or with the consent of an insured, if the insured knew or had reason to believe that the publication or statement was false."

The Allens contend that this exclusion must not be applied here. The crux of their argument is that the exclusion renders the personal injury coverage illusory and must be disregarded. We disagree. The endorsement, read in its usual and ordinary sense, would provide coverage for a misrepresentation where there is no intent to deceive and where the defendant has no reason to know that the statement made was false. The

Smiths' allegations of misrepresentation raised in the underlying complaint fall into the category of statements that the Allens knew or had reason to believe were false.

[7] 3. *Severability clause.* Finally, the policy's personal umbrella liability endorsement contains a severability clause, which provides, "The insurance provided by this endorsement applies separately to each 'insured' against whom a claim is made. But including more than one 'insured' will not increase our limit of liability." Relying on *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986), the Allens argue that the endorsement's severability clause requires that each insured be treated as having separate coverage, and therefore, coverage exists for the claims alleged against them, even though the claims against Thomas may be excluded.[FN9] In *Marnell,* the Supreme Judicial Court interpreted a similar severability clause in a homeowner's policy and determined that, notwithstanding the policy's exclusion for bodily injury arising out of the use of a motor vehicle operated by any insured, there was coverage under the policy for a negligent supervision claim brought against the insureds, who *8 had supervised a party in which their son became intoxicated, subsequently causing the death of another while operating his motor vehicle. *Id.* at 241, 244, 496 N.E.2d 158. As we have previously explained, however, the result in *Marnell* turned on the allocation of risks between homeowner's coverage and automobile liability insurance. See *Phoenix Ins. Co. v. Churchwell,* 57 Mass.App.Ct. 612, 616, 785 N.E.2d 392 (2003). That is not the situation here. Thus, even considering Karen and Frank as separate insureds, the net result is the same.

> FN9. Although raised by the parties below, the motion judge did not address the issue of severability.

Furthermore, the personal umbrella liability endorsement also states: "This insurance does not apply: ... [t]o 'bodily injury' or 'personal injury'

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

865 N.E.2d 1168
69 Mass.App.Ct. 1, 865 N.E.2d 1168
**(Cite as: 69 Mass.App.Ct. 1, 865 N.E.2d 1168)**

arising out of sexual molestation, corporal punishment or physical or mental abuse." Because the complaint in the underlying action alleges injuries due to sexual molestation, the exclusionary language in the definition of "bodily injur[ies]" precludes coverage for claims against any insured, even when considered separately, where the claims brought against them would have no basis but for the molestation. Thus, in this case, the personal umbrella liability endorsement's severability clause does not affect the applicability of the exclusion for bodily injuries arising from sexual molestation.

**\*\*1174** The other arguments raised by the Allens require no discussion. Suffice it to say that we have considered the Allens' remaining claims, and upon review find them to be without merit.

*Judgment affirmed.*

Mass.App.Ct.,2007.
Hingham Mut. Fire Ins. Co. v. Smith
69 Mass.App.Ct. 1, 865 N.E.2d 1168

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.