# Exhibit 7.



PO Box 4267  Portland  OR  97208-4267

**Norene Quam**
*Claim Specialist*
*Telephone 503-431-3083*
*        800-341-3684*
*Facsimile  866-201-3291*
*Email: norene.quam@cna.com*

January 17, 2008

Mr. Michael O'Donnell, Attorney at Law
6725 W. Clearwater Ave
Kennewick, WA  99336

Re:  *Kelly Cox v. Oasis Physical Therapy PLLC, et al.,* Washington Superior Court,
      Franklin County, Case No. 07-2-511931
      Insured:        Oasis Physical Therapy
      Claim No.:    HM107392
      Claimant:    Kelly Cox

Dear Mr. O'Donnell:

On behalf of American Casualty Company of Reading, Pa. ("American Casualty"), I write
with respect to potential insurance coverage for Mr. Rafat Shirinzadeh under Oasis Physical
Therapy's (OPT) occurrence policy, #HPG 0252126267.

It is American Casualty's understanding that your client, Rafat Shirinzadeh, has been
named as a defendant in an action entitled *Kelly Cox v. Oasis Physical Therapy PLLC, et al.,*
Washington Superior Court, Franklin County, Case No. 07-2-511931.  The Complaint in that
action seeks damages for inappropriate treatment and sexual harassment allegedly suffered by
plaintiff, Kelly Cox, while she was an employee and patient of OPT.

Based on our review and analysis of the presently-available information, American
Casualty accepts the defense of Shirinzadeh under the Policy No. HPG 0252126267 with respect
to the Complaint, subject to a complete reservation of rights, including the right to pursue a
declaratory relief action, to withdraw from the defense, and to seek reimbursement of defense
costs.  American Casualty declines the defense of Shirinzadeh's spouse under the Policy, as the
spouse does not qualify as an insured.

Our analysis is set forth below.

## SUMMARY OF RELEVANT FACTS

The following summary is taken from the allegations of the amended complaint filed on
behalf of Plaintiff Kelly Cox ("Cox" or "Plaintiff") on or about December 14, 2007.

OPT is a physical therapy firm located in Franklin County, Washington. Defendants Mindi
Irvine ("Irvine") and Rafat Shirinzadeh ("Shirinzadeh"), each of whom are physical therapists,
were the co-owners of OPT.  Irvine was also its Business Manager.

Cox was a female employee of OPT who was supervised by Irvine and Shirinzadeh. The
complaint alleges that, from 2004 and until his license was summarily suspended in 2007,
Shirinzadeh engaged in inappropriate contact with employees of OPT. As a supervisor of OPT
employees, Shirinzadeh allegedly engaged in unwelcome and inappropriate physical actions and
words, including violation of personal space, unwanted touching or embracing or assault, jokes

with sexual connotations, and unwelcome innuendos. His actions were gender based and unrelated to work.

Cox was also referred by Chiropractor Robert Rettig for treatment to correct an area of numbness between her shoulder blade and thoracic vertebra. Shirinzadeh insisted on treating Cox "skin on skin." These treatments became progressively more invasive and resulted in Shirinzadeh positioning Cox on her back and performing what amounted to breast massage for an extended period of time.

The complaint alleges that Shirinzadeh's inappropriate behavior was a frequent topic during employee staff meetings, and was reported to OPT management by OPT employees. Beginning in 2004, patients also complained about Shirinzadeh's inappropriate behavior during treatment sessions. Several patients complained to staff members that Shirinzadeh failed to drape them during examination and treatment, failed to leave the room while they dressed or undressed and insisted that clothing be removed as a condition of providing treatment. OPT failed to take reasonable actions to prevent this conduct, and Shirinzadeh's abuse of employees and patients continued. Irvine told OPT staff that Shirinzadeh was simply more "hands on" than other physical therapy practitioners, and warned them to stop "gossiping".

The complaint further alleges that Shirinzadeh's inappropriate actions with respect to OPT employees and patients violated the standards of practice applicable to licensed physical therapists in the state of Washington. On April 13, 2007, the Washington Department of Health summarily suspended Shirinzadeh's credential to practice as a physical therapist based on numerous allegations of unprofessional misconduct as a health care provider and violations of Washington State practice standards. At the time of the Department of Health investigation, Shirinzadeh was a co-owner of OPT.

The Board of Physical Therapy held a hearing August 17-20, 2007 regarding the Order of Summary Suspension and Statement of Charges issued April 13, 2007. The Board determined that Shirinzadeh's conduct violated Washington State practice standards applicable to health care providers. It also found that his actions involved moral turpitude relating to the practice of physical therapy; constituted negligence or malpractice resulting in injury to a patient or creating an unreasonable risk that a patient may be harmed; and constituted abuse of a patient or sexual contact or sexual activity with a client or patient. In addition, the Board determined that Shirinzadeh failed to chart patients' treatment in violation of Washington State practice standards, and identified other specific actions by which Shirinzadeh violated the standard of care for licensed physical therapists. These violations included behavior directed at patients who were also employees. The Board determined that the treatment provided by Shirinzadeh fell below the standard of care and suspended his license to practice for three years without the possibility of applying for early reinstatement.

The Complaint then recites the Board's findings regarding Shirinzadeh's misconduct with respect to treatment of several unidentified patients: Patients "B", "C", "D", "E", "F", "G" and "H". Several of these patients were also employees of OPT. The Complaint does not state whether Cox was one of these unidentified patients. The description of the incident relating to Patient "G", however, echoes the claim by Cox that, while Shirinzadeh was treating her for numbness to her back, he began to massage her breasts. The Board's Findings of Fact, Conclusions of Law and Final Order are attached as Exhibit A to the Complaint.

Page 3
December 17, 2008

Cox attaches as Exhibit B to the Complaint a Certificate of Merit provided by physical therapist Shawn McEwen. McEwen concludes, based on her review of various documents, including the Board's proceedings, declarations of various witnesses, and the EEOC Charge of Discrimination re Angela Hart, that there is a reasonable probability that Shirinzadeh did not meet the applicable standard of care in his treatment of patients and staff. In her opinion, Shirinzadeh:

- Touched his patients and staff inappropriately and based on unprofessional (including sexual) motivations.

- Created an environment for patients and staff that was pervasively sexual and unethical through unprofessional talk and physically inappropriate conduct;

- Violated his position of power over OPT employees, and violated the trust of patients and employees.

McEwen dismisses Shirinzadeh's explanation of his conduct (that the only way he can provide "hands on" manual therapy is from skin on skin contact) as inaccurate and not within the standard of care.

The caption of the Complaint names the following defendants: OPT, Lance and Mindi Irvine, and Rafat and Yvonee Shirinzadeh. The allegations of the complaint, however, are solely directed at OPT, Irvine and Shirinzadeh; their spouses are not mentioned.

Plaintiff alleges four Claims for Relief:

1.  Medical Negligence against Shirinzadeh and OPT.

    Plaintiff alleges that the Board has already determined that Shirinzadeh failed to meet the applicable standard of care in his treatment of patients. In support of this claim, Cox references the McEwen Certificate of Merit. She further alleges that she has suffered injuries and damage as a direct and proximate result of the defendants' failure to provide reasonably prudent medical care.

2.  Sex/Gender Hostile Environment Discrimination (RCW Chapter 49.60 et seq.) against OPT

    Cox incorporates by reference all of the factual allegations of the Complaint, and adds that OPT is prohibited from discrimination based on a person's sex or gender. In addition, sexual harassment is actionable if a hostile environment is created by sexual harassment.

3.  Negligence, Negligent Hiring, Retention and Supervision

    Cox simply incorporates by reference all of the prior allegations of the Complaint as the proximate cause of her injuries.

4.  Intentional/Negligent Infliction of Emotional Distress, Outrage, Assault and Battery

Cox again simply incorporates by reference all of the prior allegations of the Complaint as the proximate cause of her injuries.

Cox alleges that, during her employment, she was pervasively sexually harassed and assaulted by Shirinzadeh and then threatened and intimidated by OPT when she spoke out about it. Shirinzadeh also demanded that Cox observe treatment sessions of other female patients.

Cox is studying to become a chiropractor. It was not until she entered graduate school and received instruction about the standards of practice applicable to health care providers that she fully realized how Shirinzadeh's actions towards her violated standards applicable to health care providers.

Cox alleges that as a direct and proximate result of the acts and omissions of the Defendant and each of them, she suffered severe and permanent emotional distress, mental anguish, mental and emotional shock. She requests an award of special and general damages, punitive damages, and attorney's fees and costs.

## THE AMERICAN CASUALTY POLICIES

American Casualty issued policy HPG 0252126267 to Oasis Physical Therapy. The Policy initially covered the period of October 15, 2003 to October 15, 2004, but was renewed annually thereafter, to cover the periods of October 15, 2004 to October 15, 2005, and October 15, 2005 to October 15, 2006.

During each of these periods, the Policy provides Professional Liability coverage on an occurrence basis (Form G-121501-C (ed. 07/01)), with limits of $1 million each claim. The aggregate limit varied for policy period to policy period: for the 2003-2004 and 2004-2005 policy periods, the aggregate was $6 million; in 2005-2006, it was $3 million. Good Samaritan Liability, Personal Injury Liability, and Malplacement Liability are included within the Professional Liability limits.

The 2003-2004 Policy also provided Workplace Liability coverage (Form G-12503-C (ed. 07/01)), the limits of which are included within the Professional Liability Limit. It does not provide General Liability Coverage.

In contrast to the 2003-2004 Policy, the 2004-2005 and 2005-2006 Policies do not provide Workplace Liability or Personal Liability coverage. They do, however, provide General Liability coverage (Form G-12504-C (ed. 07/01)) with limits of $1 million each occurrence and $1million aggregate.

The relevant policy provisions of these coverage forms are excerpted below:

A.      **Healthcare Providers Professional Liability (All Policies)**

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

The "Healthcare Providers Professional Liability Occurrence Coverage Part – Occurrence" form attached to each of the Policies provides as follows:

### I.      COVERAGE AGREEMENTS

Coverage under any of the following coverage agreement apply only to acts, errors or omissions, including medical incidents, . . . which occurred on or after the effective date of coverage, and before the expiration date of the policy period stated on the certificate of insurance.

### A.      PROFESSIONAL LIABILITY

We will pay all amounts, up to the Professional Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a professional liability claim arising out of a medical incident by you or by someone for whose professional services you are legally responsible.

### B.      GOOD SAMARITAN LIABILITY

We will pay all amounts, up to the Good Samaritan limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a Good Samaritan claim arising out of personal injury.

### C.      PERSONAL INJURY LIABILITY

We will pay all amounts, up to the Personal Injury Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a personal injury claim arising out of personal injury.

### D.      MALPLACEMENT LIABILITY

We will pay all amounts, up to the Malplacement Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a malplacement claim arising out of a placement services incident.

### III.  DEFENSE AND SETTLEMENT

We have the right and duty to defend any claim that is a professional liability claim . . . personal injury claim or malplacement claim.   We will:

A.  do this even if any of the charges of the claim are groundless, false or fraudulent; and
B.  investigate and settle any claim, as we feel appropriate.

[As modified by the Washington Amendatory Endorsement]  Our payment of the limit of liability, by payment of judgments or settlements, ends our duty to defend or settle.  We have no duty to defend any claims not covered by this Coverage Part.

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

IV. ADDITIONAL DEFINITIONS

For purposes of this coverage part only, words in bold have the meaning set forth below:

. . .

"Injury" means bodily injury, sickness, disease, mental or emotional distress sustained by a person, or death.

. . .

"Medical Incident" means any act, error or omission in your providing professional services which results in injury or damage.  Medical incident does not include a Good Samaritan incident, a placement services incident or personal injury.

"Personal injury claim" means a claim arising out of personal injury.

. . .

"Professional Liability Claim" means a claim arising out of a medical incident.

"Related claim" mean all claims arising out of a single act, error or omission or arising out of related acts errors or omissions in the rendering of professional services or placement services.

"Related acts errors or omission" means all acts errors or omissions in the rendering of professional services or placement services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

"You" or "Your" means the named insured and, if the named insured is not a natural person:

1.  any individual who, during the policy period, is or becomes a partner, officer, director, stockholder-employee, manager, member or employee of the named insured, but only for professional services performed on behalf of the named insured; or

2.  . . .

3.  any individual previously affiliated with the named insured as its partner, officer, director, stockholder-employee, manager, member or employee but only for professional services performed on behalf of the named insured during the course of such employment.

V. EXCLUSIONS

We will not defend or pay for:

A.  [as modified by Washington Amendatory Change Endorsement]

. . .

With respect to injury to employees of yours whose employment  is subject to the Industrial Insurance Act of Washington, this exclusion is replaced with the following:

A.  injury to an employee of yours arising out of and in the course of

    1.  employment by you; or

    2.  performing duties related to the conduct of your business; or

    Any obligation to share damages with or repay someone else who must pay damages because of the injury.

    This exclusion does not apply to liability assumed by you under an insured contract.

B.  any unemployment, workers' compensation, disability benefits, or other similar law;

C.  any liability you assume under any contract or agreement.  This exclusion does not apply to:

    1.  liability you assume under a contract with a Health Maintenance Organization, Preferred Provider Organization, Independent practice Association, or any other similar organization; but only for such liability as is attributable to your alleged negligence; or

    2.  a warranty of fitness or quality of any therapeutic agents or supplies you have furnished or supplied in connection with treatment you have performed.

\* \* \*

F.  a willful violation of a statute, ordinance or regulation imposing criminal penalties.  We will defend any civil suit against you seeking amounts, which would be covered if this exclusion did not apply.  In such case, we will pay only claim expenses.

\* \* \*

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

I.  the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

J.  liability resulting from professional services you provide while your license or certification to practice is suspended, revoked or no longer valid;

K.  injury or damage you expected or intended, or which a reasonable person would have expected…..

. . .

N.  any claim arising out of any act, error, or omission, including a medical incident . . . or personal injury that happened before the effective date of this policy.

O.  any direct or consequential injury or damage arising out of any:

1.  refusal to employ; or

2.  termination of employment; or

3.  coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

P.  any act of sexual intimacy, sexual molestation or sexual assault. We shall provide you with a defense of such claim unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admissions, whether appealed or not.  Such defense will not waive any of our rights under this policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against you;

. . .

## VI. LIMIT OF LIABILITY

A.  Each Claim

The limits of liability stated on the certificate of insurance as applicable to "each claim" means that our liability for such claim shall not exceed such stated amount.

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

B. Aggregate

Subject to provision A. above, limits of liability stated on the certificate of insurance as applicable to "all claims in the aggregate" means that our liability shall not exceed such stated amount.

C. Claim Expenses

Claim expenses are in addition to our limits of liability.

D. Multiple Insureds, Claims and Claimants

The limits of liability shown on the certificate of insurance is the maximum amount we will pay regardless of the number of you insured under this Coverage Part, claims made or persons or entities making claims.

E. Related Claims

If related claims are made against you, all such related claims shall be considered a single claim, and the limits of liability applicable to such claim shall be the limits of liability applicable to the policy period in force when the act, error or omission, or earliest of related acts, errors or omissions, occurred.

## B. **Workplace Liability (the 2003-2004 Policy Only)**

Workplace Liability coverage is provided under the 2003-2004 Policy under Form G-121503-C (7/2001).  The Workplace Liability Coverage Agreement states:

I.  COVERAGE AGREEMENT

A.  WORKPLACE LIABILITY

Subject to paragraph B below, we will pay all amounts, up to the Workplace Liability limit of liability stated on the certificate of insurance, which you become legally obligated to pay, including host liquor liability and products liability, as a result of injury or damage to which this coverage part applies. We will also pay claim expenses.  The injury or damage must be caused by an occurrence that happens at the workplace during the policy period.

B.  FIRE & WATER LEGAL LIABILITY

. . .

C.  PERSONAL LIABILITY

Where the named insured is a natural person, we will pay all amounts, up to the Personal Liability limits of liability stated on the certificate of

insurance, that the named insured becomes legally obligated to pay for injury or damage as a result of a personal liability claim. The injury or damage must be caused by an occurrence that happens at named insured's residence and arises out of named insured's non-business activities. This coverage shall not apply to damage to property the named insured owns, rents, occupies or uses, or which is in the named insured's care, custody or control.

Coverage for personal liability claims will only apply if the named insured is a natural person with no employees.

. . .

## III. ADDITIONAL DEFINITIONS

For purposes of this coverage part only, words in bold have the meaning set forth below:

. . .

"Injury" means bodily injury, sickness, disease, mental or emotional distress sustained by a person, or death.

. . .

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in injury or damage.

"Personal liability claim" means a claim arising out of injury or damage to a third party that happens at the named insured's personal residence and arises out of non-business activity.

"You" or "Your" means the named insured and, if the named insured is not a natural person:

1. any individual who, during the policy period, is or becomes a partner, officer, director, stockholder-employee, manager, member or employee of the named insured, but only while acting within the scope of their employment by the named insured; or

2. . . .; or

3. any individual previously affiliated with the named insured as its partner, officer, director, stockholder-employee, manager, member or employee but only while acting within the scope of their employment by the named insured, during the course of such employment.

## IV. EXCLUSIONS

We will not defend any claim for, or pay any amounts, including claim

expenses, based on, arising out of, or related to:

A. injury to:

    1. an employee of the named insured arising out of and in the course of employment by the named insured; or

    2. a family member of that employee as a consequence of 1 above; or

    3. the named insured's family member.

This exclusion applies:

    1. whether the named insured may be liable as an employer or in any other capacity; and

    2. to any obligation to share amounts with or repay someone else who must pay amounts because of the injury or damage;

. . .

C. injury or damage resulting from any professional services, placement services or personal injury;

. . .

J. the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

K. injury or damage you expected or intended, or which a reasonable person would have expected. This exclusion does not apply to injury or damage resulting from the use of reasonable force to protect persons or property;

. . .

V. any act of sexual intimacy, sexual molestation or sexual assault. We shall provide you with a defense of such claim unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of our rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against you;

W. any direct or consequential injury or damage arising out of any:

    3. refusal to employ; or

    4. termination of employment; or

    5. coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

X. by or on behalf of you against any other of you.

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

### C. General Liability (the 2004-2005 and 2005-2006 Policies Only)

The 2004-2005 and 2005-2006 Policies provide General Liability coverage under Form G-12504-C (ed. 07/01), "Healthcare Providers General Liability Coverage Part – Occurrence." The General Liability Coverage Agreement states:

> . . . We will pay all amounts, up to the General Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay . . . as a result of injury or damage to which this coverage part applies. We will also play claim expenses. The injury or damage must be caused by an occurrence . . . during the policy period.

* * *

IV.   EXCLUSIONS

We will not defend any claim for, or pay any amounts, including claim expenses, based on, arising out of, or related to:

A.   [as modified by Washington Amendatory Change Endorsement]

injury to:

1.   an employee of yours arising out of and in the course of employment by you; or

2.   a family member of that employee as a consequence of 1 above; or

3.   your family member.

This exclusion applies:

1.   whether you may be liable as an employer or in any other capacity; or

2.   to any obligation to share amounts with or repay someone else who must pay amounts because of the injury.

This exclusion applies only to injury to any employee of yours whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to injury to employees of yours whose employment is subject to the Industrial insurance Act of Washington, this exclusion is replaced with the following:

A.   injury to an employee of yours arising out of and in the course of

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

    a.  employment by you; or

    b.  performing duties related to the conduct of your business; or

any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by you under an insured contract.

. . .

D.  amounts which the named insured or any party must pay under any unemployment or workers' compensation, disability benefits, or other similar law.

E.  injury or damage resulting from any professional services, placement services or personal injury;

. . .

F.  injury or damage resulting from a willful violation of a statute, ordinance or regulation imposing criminal penalties. We will defend any civil suit against you seeking amounts, which would be covered if this exclusion did not apply. In such case, we will pay only claim expenses.

. . .

J.  the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

K.  injury or damage you expected or intended, or which a reasonable person would have expected.....

. . .

V.  any act of sexual intimacy, sexual molestation or sexual assault. We shall provide you with a defense of such claim unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admissions, whether appealed or not. Such defense will not waive any of our rights under this policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against you;

PSB DEC - 234

W.  any direct or consequential injury or damage arising out of any:

    3.  refusal to employ; or

    4.  termination of employment; or

    5.  coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

X.  by or on behalf of you against any other of you.

The Additional Definitions section (section III) of the General Liability Coverage Form contains definitions of "injury" and "'you' or 'your'" that are identical to the definitions in the Professional Liability Coverage Part. In addition, it defines "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in injury or damage."

The "Common Policy Conditions (Form 121500-C) applicable to all of the Policies contains the following potentially relevant condition:

IV.   Separation of Insureds

This policy applies separately to each of you against whom a claim is brought except with respect to:

A.  the limits of the liability; and

B.  any of your duties as the first named insured on the  certificate of insurance.

The "Common Policy Conditions form also contains the following potentially relevant definitions:

"Claim" means a demand for money or services alleging injury or damage.  Claim also means the filing of a suit or the starting of arbitration proceedings naming you and alleging injury or damage.

"Damage" means:

    1.  physical injury to tangible property, including all resulting loss of use of that property; or

    2.  loss of use of tangible property that is not physically injured.

"Employee" means an individual whose work is engaged and directed by the named insured.

Case 2:08-cv-05077-LRS   Document 31-8   Filed 05/01/09

3. any individual previously affiliated with the named insured as its partner, officer, director, stockholder-employee, manager, member or employee but only for professional services performed on behalf of the named insured during the course of such employment.

Here, OPT is the named insured, and Shirinzadeh should qualify as an insured under subparts 1 and/or 3 of the definition of "you."

American Casualty has no information suggesting that the spouse of Shirinzadeh, who is named as a co-defendant in the caption of the Complaint, is or was a partner, officer, director, or employee of OPT. American Casualty therefore concludes that Shirinzadeh's spouse does not qualify as an insured under the Professional Liability Coverage Part, and respectfully denies coverage and/or a duty to defend Shirinzadeh's spouse with respect to the Complaint.

### b. "Professional Liability Claim"

"Professional Liability Claim" means "a claim arising out of a medical incident." "Claim" means "a demand for money or services alleging injury or damage. Claim also means the filing of a suit or the starting of arbitration proceedings naming you and alleging injury or damage." "Injury" means bodily injury, sickness, disease, mental or emotional distress sustained by a person, or death. "Damage" means: "physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured."

Cox does not allege any injury to or loss of use of tangible property, and therefore does not allege "property damage" as that term is defined in the Policies. In her Complaint, however, Cox alleges that she suffered severe and permanent emotional distress, mental anguish, mental and emotional shock, which should constitute a "claim" for "injury" as that term is defined in the Professional Liability Coverage part.

To constitute a "professional liability claim," however, the claim must arise out of a "medical incident," which is defined as an "act, error or omission" in OPT's providing "professional services." "Professional services" is defined to mean, those services OPT is "licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the certificate of insurance [Physical Therapist Firm]," and which are performed by or on behalf of the named insured.

In her Complaint, Cox bases her claim in part upon her status as an employee, and in part upon her status as a patient of OPT. To the extent that her claim is based on her status as an employee, the claim does not arise out of the provision of "professional services" and there can be no coverage under the Professional Liability coverage part; American Casualty reserves its rights accordingly.

### 2. Personal Injury Liability

"Personal injury" means injury arising out of one or more of the following offenses committed in the conduct of your professional services:

. . .

> 5. a violation of an individual's or entity's right to privacy;
>
> 6. assault, battery, mental anguish, mental shock or humiliation;

. . .

"Professional Services" means those services for which you are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency responsible for maintaining the standards of the profession(s) shown on the certificate of insurance and which you perform as, or on behalf of, the named insured. . . .

## ANALYSIS

A.   **The Professional Liability Coverage Part**

### 1.   **Insuring Agreement**

Coverage A, Professional Liability, of the Professional Liability Coverage Part covers: "amounts, up to the Professional Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a professional liability claim arising out of a medical incident by you or by someone for whose professional services you are legally responsible."

**a.   "You"**

The Professional Liability Coverage Part covers amounts that "you" become legally obligated to pay. "You" is defined in relevant part as follows:

"You" or "Your" means the named insured and, if the named insured is not a natural person:

> 1. any individual who, during the policy period, is or becomes any individual who, during the policy period, is or becomes a partner, officer, director, stockholder-employee, manager, member or employee of the named insured, but only for professional services performed on behalf of the named insured; or
>
> 2. . . .

The Personal Injury Liability coverage applies to a "personal injury claim" arising out of a "personal injury," which is defined to include "assault, battery, mental anguish, mental shock or humiliation." To the extent that Cox's alleged injury did not result from assault, battery, and resulting emotional distress, there can be no coverage under the Personal Injury Liability insuring agreement, and American Casualty reserves its rights accordingly.

### 3. Trigger

The Professional Liability Coverage Part covers medical incidents which occurred on or after the effective date of coverage, and before the expiration date of the policy period stated on the certificate of insurance. American Casualty reserves its right to deny coverage to the extent that the alleged conduct of Shirinzadeh did not occur during the relevant policy periods.

### 4. Exclusions

#### a. Employment-Related Practices Exclusion

Exclusion O to the Professional Liability Coverage Form, which applies to both the Professional Liability and the Personal Injury coverages, bars coverage for:

> any direct or consequential injury or damage arising out of any:

1. refusal to employ; or

2. termination of employment; or

3. coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions

Cox bases her claim against Shirinzadeh in part on acts or omissions that occurred in the context of Cox's employment at OPT. To the extent that Cox's claims arose out of employment-related acts or omissions, this exclusion operates as a complete bar to coverage for Shirinzadeh. American Casualty reserves its rights accordingly.

#### b. Exclusion P – Acts of Sexual Intimacy, Sexual Molestation or Sexual Assault

Exclusion P bars coverage for claims arising out of "any act of sexual intimacy, sexual molestation or sexual assault." Cox's claims against Shirinzadeh allege in part that her injuries arose out of Shirinzadeh's alleged sexual misconduct. To the extent that Cox's claims are based upon or arise out of sexual molestation that occurred in the course of Shirinzadeh's physical therapy treatments, this exclusion precludes coverage for the claims against Shirinzadeh, and American Casualty reserves its right to deny coverage on this basis.

#### c. Exclusion B – Workers' Compensation

Exclusion B bars coverage for "any unemployment, workers' compensation, disability benefits, or other similar law." This exclusion precludes coverage for any insured's liability to reimburse for such benefits. American Casualty reserves its rights accordingly.

### d. Other Exclusions.

Exclusion F bars coverage for any claims arising from a "willful violation of a statute, ordinance or regulation imposing criminal penalties." To the extent that Cox's claims arise from such a violation, there would be no coverage under the Policy. American Casualty reserves its rights accordingly.

Exclusion I bars coverage for: "the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law." To the extent that Cox seeks recovery of fees paid to OPT, or punitive damages, such awards would not be covered under the Policy. American Casualty reserves its rights accordingly.

Any coverage for intentional torts would be excluded under Exclusion K for "expected or intended" injury or damage. This includes the claims for Sex/Gender Hostile Environment Discrimination and for intentional infliction of emotional distress, outrage, assault and battery. American Casualty reserves its rights accordingly.

Exclusion N bars coverage for "any claim arising out of any act, error, or omission, including a medical incident . . . or personal injury that happened before the effective date of this policy. American Casualty reserves its right to deny coverage on this basis.

### B. Workplace Liability Coverage Part (2003-2004 Policy Only)

The insuring agreement of the Healthcare Providers Workplace Liability Coverage Part covers "amounts you become legally obligated to pay" with respect to "injury or damage . . . caused by an occurrence that happens at the workplace during the policy period."

The terms "you," "injury" and "damage" are subject to the same definitions as under the Professional Liability Coverage Part. "Workplace" is defined in the Conditions portions of the Policy to mean "any location used by you to provide professional services."

### 1. "You"

As discussed in the preceding section, American Casualty has no information suggesting that Irvine's spouse falls within the Policy's definition of "you." Accordingly, American Casualty respectfully declines a duty to defend and/or indemnify Shirinzadeh's spouse under the Workplace Liability Coverage Part.

### 2. "Injury" or "Damage"

As discussed above, the Complaint does not allege "property damage" within the meaning of this Coverage Part because it does not allege injury to or loss of use of tangible property. It does, however, allege that Cox has suffered emotional injury as a result of defendants' alleged acts or omissions. Accordingly, the requirement of an allegation of "injury" is satisfied here.

### 3.    "Occurrence"

"Occurrence" is defined under the Workplace Liability Coverage Form to mean: "an accident, including continuous or repeated exposure to conditions, which results in injury or damage." To the extent that Cox's alleged injuries did not result from an "occurrence," there is no coverage under the Workplace Liability coverage part and American Casualty reserves its rights accordingly.

### 4.    Trigger

The Workplace Liability Coverage applies to occurrences during the policy period. Even assuming an "occurrence," to the extent that "occurrence" did not happen during the relevant policy periods, there would be no coverage, and American Casualty reserves its rights accordingly.

### 5.    Exclusions

#### a.    Exclusion C – Professional Services

Exclusions C to the Workplace Liability Coverage Part precludes coverage for claims arising out of "injury or damage resulting from any professional services, placement services or personal injury." To the extent that Cox's claims are based upon her status as a patient, her claim arises out of professional services. Accordingly, this exclusion is a complete bar to coverage under the Workplace Liability Coverage Part for that aspect of her claim; American Casualty reserves its rights accordingly.

#### b.    Exclusion X – By You Against You.

Exclusion X bars coverage for claims "by or on behalf of you against any other of you." As noted above, "you" is defined to include in addition to the named insured, any partner, officer, director, manager or employee of the named insured but only while acting within the scope of their employment by the named insured. Here, to the extent that Cox bases her claims on her status as an employee of OPT, this Exclusion bars coverage for this claim. American Casualty reserves its rights accordingly.

### c.   Exclusions V and W — Sexual Molestation and Employment-Related Practices

Exclusions V and W to the Workplace Liability Coverage Part are identical to Exclusions O (Employment-related Practices) and P (Sexual Molestation) contained in the Professional Liability Coverage part.  To the extent that Cox's claims are based upon her status as an employee, Exclusion W, Employment-Related Practices, precludes coverage for all claims against Shirinzadeh.  To the extent that Cox's claims arise out of the sexual misconduct of Shirinzadeh, Exclusion V would apply to preclude coverage.  American Casualty reserves its rights accordingly.

### 6.   Other Exclusions

There are a number of other exclusions that could bar coverage for Cox's claims under the Workplace Liability Coverage Part. These include:

Exclusion A., "injury to an employee of yours arising out of and in the course of employment by you; or performing duties related to the conduct of your business . . ."

Exclusion B, "amounts which the named insured or any party must pay under any unemployment or workers' compensation, disability benefits, or other similar law"

Exclusion F, "injury or damage resulting from a willful violation of a statute, ordinance or regulation imposing criminal penalties"

Exclusion I ". . . any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law"

Exclusion J, ""the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law"

Exclusion K, "injury or damage you expected or intended, or which a reasonable person would have expected"

American Casualty reserves its right to deny coverage based upon these exclusions.

## C.   The General Liability Coverage Part (2004-2005 and 2005-2006 Policies Only)

The insuring agreement of the Healthcare Providers General Liability Coverage Part covers all amounts "which you become legally obligated to pay . . . as a result of injury or damage to which this insurance applies. . . . The injury or damage must be caused by an occurrence . . . during the policy period."

Page 21
December 17, 2008

The definitions of the terms "'you' or 'your.'" "injury" and "damage" in the General Liability Coverage Part are identical to those in the Professional Liability Coverage Part, and the definition of "occurrence" is identical to that in the Workplace Liability Coverage Part. As noted above, Cox does not claim to have suffered "damage" as defined in the Policies. She does, however, at least potentially allege emotional distress; accordingly she has alleged "injury" within the meaning of the Policies.

To the extent that the Complaint does not allege an "occurrence," there can be no coverage under this coverage part. American Casualty reserves its rights accordingly. Further, American Casualty reserves its right to deny coverage based upon exclusions contained in the General Liability coverage part, including the employment related practices exclusion (Exclusion W) and the sexual molestation exclusion (Exclusion V), and including:

- Exclusion A., "injury to an employee of yours arising out of and in the course of employment by you; or performing duties related to the conduct of your business . . ."

- Exclusion B, "amounts which the named insured or any party must pay under any unemployment or workers' compensation, disability benefits, or other similar law"

- Exclusion F, "injury or damage resulting from a willful violation of a statute, ordinance or regulation imposing criminal penalties"

- Exclusion I ". . . any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law"

- Exclusion K, "injury or damage you expected or intended, or which a reasonable person would have expected"

In addition, Exclusion J. bars coverage for "injury or damage resulting from any professional services . . . or personal injury. To the extent that Cox's claim arises out of professional services or personal injury, this exclusion applies.

Finally, Exclusion X bars coverage for claims "by or on behalf of you against any other of you." As noted above, "you" is defined to include in addition to the named insured, any partner, officer, director, manager or employee of the named insured but only while acting within the scope of their employment by the named insured. To the extent that Cox bases her claim on her status as an employee of OPT, this Exclusion bars coverage for this claim.

American Casualty reserves its right to deny coverage based upon the aforementioned exclusions.

## CONCLUSION

American Casualty agrees to defend your client, Shirinzadeh, with respect to the Complaint. American Casualty has referred the handling of Shirinzadeh's case to Rebecca Ringer. Please cooperate with her regarding this matter. Ms. Ringer can be reached at Floyd, Pflueger & Ringer, 2505 Third Ave, #300, Seattle, WA 98121. Her telephone number is 206-441-4455.

Please let both Ms. Ringer and me the extent to which you will be involved from here forward. Obviously, Mr. Shirinzadeh may choose to retain you, at his own expense, to assist his defense of the potential uncovered allegations. In that case, both American Casualty and Ms. Ringer will work with you in that regard.

American Casualty reserves all rights available under the Policies and at law. American Casualty's actions to date should not be construed as an admission of coverage for the claim under the Policies. American Casualty reserves the right to raise additional policy defenses, as well as any legal, equitable, and contractual defenses, at any time. American Casualty does not waive any rights or defenses, whether or not discussed in this letter. American Casualty reserves its right to supplement this letter. American Casualty specifically reserves the right to withdraw from Mr. Shirinzadeh's defense should further facts be discovered establishing that there is no coverage under the Policies for this claim. American Casualty reserves the right to recoup any defense costs paid with respect to claims that are later determined not to be covered under the Policies.

As stated above, American Casualty's coverage position is based upon the information available to us. If you or Mr. Shirinzadeh have any other information that you believe is relevant to this claim, or if you or he believe that we have misstated any facts, please advise us as soon as possible. Please be assured that we will give any such information all due consideration. American Casualty is committed to the prompt and fair handling of all claims for coverage.

Should you or Mr. Shirinzadeh have any questions regarding this letter, please do not hesitate to contact me.

Sincerely,

Norene M. Quam
American Casualty Company of Reading, PA
503-431-3083
Norene.quam@cna.com

Cc:  Rebecca Ringer, by email