Exhibit 11.



PO Box 4267  Portland  OR  97208-4267

**Norene Quam**
Claim Specialist
Telephone 503-431-3083
          800-341-3684
Facsimile  866-201-3291
Email: norene.quam@cna.com

August 25, 2008

Sent by CERTIFIED MAIL

Rafat Shirizadeh
4616 W. Wernett Rd
Pasco, WA 99301

Mr. Michael O'Donnell – sent by email only
Attorney at Law
6725 W. Clearwater Ave
Kennewick, WA  99336

Re:  Oasis Physical Therapy (Hart) Coverage Matter
     *Angela Hart v. Oasis Physical Therapy, PLLC,* et al., U.S.D.C. Eastern District of
     Washington, Case No. CV08-5040 RHW
     Insured:      Oasis Physical Therapy
     Claim No.:    HM098158
     Claimant:     Angela Hart

Dear Mr. Shirinzadeh and Mr. O'Donnell:

On behalf of American Casualty Company of Reading, Pa. ("American Casualty"), the following
will respond to your request for insurance coverage under American Casualty Policy No. HPG
0252126267.  Oasis Physical Therapy ("OPT"), Rafat Shirinzadeh and Melinda Irvine are
defendants in an action entitled *Angela Hart v. Oasis Physical Therapy, PLLC,* et al., U.S.D.C.
Eastern District of Washington, Case No. CV08-5040  (the "*Hart*" action").  Plaintiff Angela Hart
("Hart") alleges constructive discharge, sexual harassment, assault and battery that she allegedly
suffered while working as a bookkeeper at OPT.

Based on our review of the information presently available, American Casualty concludes that
there is no duty to defend Mr. Shirinzadeh under policy No. HPG 0252126267 because the Hart
action fails to allege claims which potentially covered under the Policy.  However, American
Casualty is willing, as a courtesy, to defend Mr. Shirinzadeh in the *Hart* lawsuit, subject to a
complete reservation of rights, including the right to pursue a declaratory relief action, to
withdraw from the defense, and to seek reimbursement of defense costs.  American Casualty
declines to defend Mr. Shirinzadeh's spouse, Yvonne Shirinzadeh, because she does not qualify as
an insured.  If Mr. Shirinzadeh does not wish to avail himself of the "courtesy defense" offered by
American Casualty and wishes to retain separate counsel, please advise as soon as possible.

The following will explain our position:

Page 2
December 19, 2008

## I.    SUMMARY OF RELEVANT FACTS

Oasis Physical Therapy ("OPT") is a physical therapy firm located in the Tri Cities (Pasco, Kennewick, Richland), in Franklin County, Washington.  Defendants Melinda Irvine ("Irvine") and Rafat Shirinzadeh ("Shirinzadeh"), each of whom are physical therapists, were the co-owners of OPT.  According to the operating agreement between Shirinzadeh and Irvine, OPT was formed as a professional limited liability company in August 2001.  Under the agreement, Irvine served as the Business Manager for OPT.  Shirinzadeh and Irvine each owned fifty percent of the company, up until Shirinzadeh left the business following the April 2007 suspension of his physical therapist license.

### B.    The Hart Lawsuit

On July 9, 2008, Claimant Angela Hart ("Hart") filed a lawsuit in United States District.  The basis for federal jurisdiction is the claim under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, et seq.)   Thus, the Court has "federal question" subject matter jurisdiction.

According to the allegations in the Complaint, Hart was employed as a bookkeeper at OPT from January 2002 through October 2006.  Hart alleges that, during the course of her employment at OPT she was subjected to harassment and discrimination.

The lawsuit alleges the following causes of action:

> (1)    Sexual Harassment (Title VII);
>
> (2)    Retaliation (Title VII);
>
> (3)    Hostile Environment Based on Sex Pursuant to Washington State Law - R.C.W. 49.60.180(3);
>
> (4)    Retaliation Based on Sex Pursuant to Washington State Law –
>
> R.C.W Ch. 29.60 et seq.;
>
> (5)    Constructive Discharge Pursuant to Washington State Law;
>
> (6)    Negligence, Negligent Hiring, Retention and Supervision;
>
> (7)    Intentional / Negligent Infliction of Emotional Distress;
>
> (8)    Assault; and
>
> (9)    Battery

The factual allegations upon which the foregoing causes of action are summarized as follows:

Shirinzadeh, an owner of OPT and "clinic manager," had supervisory authority over and the ability to discipline OPT employees.  Hart alleges that Shirinzadeh "made inappropriate and unwelcome comments to [Hart] of a sexual nature, made invasive inquiries about [Hart's] sex life or the sexual activities of other female employees, and continually hugged and touched Plaintiff and other female employees."  See Complaint ¶12.

Case 2:08-cv-05077-LRS    Document 31-12    Filed 05/01/09

"Although [Hart] had no medical diagnoses to support or mandate the need for physical therapy, Rafat Shirinzadeh informed [Hart] she had medical issues that required physical therapy intervention and he insisted upon providing the treatment himself.  [Hart] refused the unwelcome physical contact, but Defendant Shirinzadeh used his position as an OPT owner and manager, and referred to his superior knowledge as a health care provider, implying it was in her best interest medically and in the context of her employment, to permit his touch.  The "treatment" sessions became increasingly more invasive and Rafat Shirinzadeh touch Plaintiff inappropriately for his own sexual gratification.  Defendant Shirinzadeh did not keep records of the so-called "treatment" he provided which Plaintiff believes is consistent with and in support of his desire for self-gratification."  (See Complaint ¶12.)

OPT knew or should have known that Shirinzadeh was "likely to behave inappropriately with female employees and patients" because defendant Melinda Irvine had, since 2004, received numerous complaints from OPT employees about Shirinzadeh's inappropriate behavior.  For example, "OPT employees repeatedly notified OPT management at open staff meetings that Rafat Shirinzadeh unnecessarily exposed female patients during treatment."  As a result of these complaints, Shirinzadeh was instructed to allow patients to leave their bras on, to make sure female patients wore tank tops and to use appropriate draping techniques to protect patients' privacy.  The Complaint alleges that Shirinzadeh ignored these instructions and that Melinda Irvine was "fully aware" that Shirinzadeh was ignoring these instructions. See Complaint ¶14.

As an example of Irvine's alleged awareness of Shirinzadeh's misconduct, the Complaint alleges that Irvine was advised in late 2004 that "Shirinzadeh inappropriately touched a female employee during a patient treatment session.  Defendant Shirinzadeh ordered the patient employee to remove her gown.  After this patient/employee was nude from the waist up, Rafat Shirinzadeh instructed her to recline on the treatment table.  He performed ultrasound on this patient/ employee's sternum and bare breast, touching her bare breast with the ultrasound wand.  The patient/employee was upset by the experience and confided in [Hart].  [Hart] reported the incident directly to Defendant Melinda Irvine, OPT's business manager."

The Complaint further alleges that employees reported other similar incidents to Irvine in 2004 and 2005 but that Irvine failed to take appropriate steps to report or address Shirinzadeh's sexual misconduct.  Instead, "employees were warned not talk about Shirinzadeh's behavior and were silenced by management through the use of threats against their jobs."

Shirinzadeh's alleged harassment of Hart culminated in the following alleged incidents:

- On September 5, 2006, Shirinzadeh demanded that Hart accompany him to private treatment room and watch while he "manipulated" a female patient. This was not one her job duties.  The patient was unclothed from the waist up and not properly draped.  That evening, Shirinzadeh telephoned Hart at home to express how glad he was that she witnessed this treatment. (See Complaint ¶17.)

- On September 6, 2006, Shirinzadeh approached Plaintiff and insisted that she "needed" a private therapy session, like the one she observed the previous day.  He ignored Hart's refusals and referred to his superior knowledge as a credentialed heath care professional and his status as her boss to insist that she submit to the treatment.  During the session, he exposed and fondled her

Page 4
December 19, 2008

> breasts and stated she had "nice boobs." After the session, he stayed in the
> room and handed Plaintiff her clothing as she dressed, then gave her a sensual
> hug. Hart alleges that she reported the incident to Melinda Irvine. (See
> Complaint ¶18.)

Hart alleges that she was forced to resign her employment in October 2006 because the sexual harassment she was subjected to created intolerable working conditions. See Complaint ¶21.

In October 2006, Hart filed a complaint with the Washington State Department of Health Board of Physical Therapy concerning the sexual misconduct to which she was subjected at OPT. The complaint goes on to allege that, on October 31, 2007, the DOH issued a decision determining that Shirinzadeh had engaged in sexual misconduct and that his conduct violated the standards applicable to credentialed physical therapists. The DOH decision is attached as Exhibit 1 to the complaint.

Based on the foregoing, Hart seeks the following damages and relief:

> (1) Compensatory damages including but not limited to future pecuniary
> losses such as but not limited to, back pay, front pay, pre-judgment and
> post-judgment interest, fringe benefits;

> (2) Punitive damages pursuant to Title VII, as currently amended;

> (3) Damages for emotional pain, suffering, inconvenience, mental anguish,
> loss of enjoyment of life, and other non-pecuniary losses.

> (4) Attorneys fees and costs.

See Complaint, p. 16.

### C. The Washington Department of Health Proceedings

On April 13, 2007, the Washington Department of Health summarily suspended Shirinzadeh's credential to practice as a physical therapist based on numerous allegations of unprofessional misconduct as a health care provider and violations of Washington State practice standards. The DOH conducted a hearing on the matter in August 17 2007.

On October 31, 2007, the DOH issued a decision, containing "Findings of Fact" and "Conclusions of Law" which determined that Shirinzadeh's conduct violated Washington State practice standards applicable to health care providers. It also found that his actions involved moral turpitude relating to the practice of physical therapy; constituted negligence or malpractice resulting in injury to a patient or creating an unreasonable risk that a patient may be harmed; and constituted abuse of a patient or sexual contact or sexual activity with a client or patient. In addition, the DOH determined that Shirinzadeh failed to chart patients' treatment in violation of Washington State practice standards, and identified other specific actions by which Shirinzadeh violated the standard of care for licensed physical therapists. These violations included behavior directed at patients who were also employees. The DOH determined that, with respect to Patients B, C, D, E, F, G, and H, Shirinzadeh violated the standard of care applicable to physical therapists and that the "Department proved with clear and convincing evidence that Shirinzadeh

Page 5
December 19, 2008

violated R.C.W. 18.130.180 (7) and (24) and WAC 246-915-182, abuse of a patient or sexual conduct or sexual activity with a client or patient." The decision further stated that Patient A had dismissed her claims.

## II.    SUMMARY OF PERTINENT POLICY PROVISIONS

American Casualty issued policy HPG 0252126267 to Oasis Physical Therapy (hereafter "the Policy"). The Policy initially covered the period of October 15, 2003 to October 15, 2004, but was renewed annually thereafter, to cover the periods of October 15, 2004 to October 15, 2005; October 15, 2005 to October 15, 2006; and October 15, 2006 - October 15, 2007.

The Policy provides Professional Liability coverage on an occurrence basis (Form G-121501-C (ed. 07/01), with limits of $1 million each claim and $3 million aggregate. Good Samaritan Liability, Personal Injury Liability, and Malplacement Liability are included with the Professional Liability limits. It also provides General Liability coverage (Form G-121504-C (ed. 07/01)) with limits of $1 million each occurrence and $1 million aggregate. Coverage extensions were listed on the declarations page as follows: License Protection -- $10,000 per proceeding; Defendant Expense Benefit -- $10,000 aggregate; Deposition Representation -- $10,000 aggregate; Assault -- $10,000 per incident, $25,000 aggregate; Medical Payments -- $2,000 per person, $100,000 aggregate. The policy does not provide Workplace Liability or Personal Liability coverage.

The relevant policy provisions of these coverage forms are excerpted below:

### A.    Healthcare Providers Professional Liability

The "Healthcare Providers Professional Liability Occurrence Coverage Part – Occurrence" form attached to each of the Policies provides as follows:

#### I.    COVERAGE AGREEMENTS

Coverage under any of the following coverage agreements apply only to acts, errors or omissions, including medical incidents, . . . which occurred on or after the effective date of coverage, and before the expiration date of the policy period stated on the certificate of insurance.

#### A.    PROFESSIONAL LIABILITY

We will pay all amounts, up to the Professional Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay as a result of a professional liability claim arising out of a medical incident by you or by someone for whose professional services you are legally responsible.

. . . .

## III.    DEFENSE AND SETTLEMENT

We have the right and duty to defend any claim that is a professional
liability claim . . . personal injury claim or malplacement claim.    We will:

      A.    do this even if any of the charges of the claim are groundless, false or
fraudulent; and

      B.    investigate and settle any claim, as we feel appropriate.

[As modified by the Washington Amendatory Endorsement]  Our payment
of the limit of liability, by payment of judgments or settlements, ends our
duty to defend or settle.  We have no duty to defend any claims not
covered by this Coverage Part.

## IV.    ADDITIONAL DEFINITIONS

For purposes of this coverage part only, words in bold have the meaning set forth below:

. . .

"Injury" means bodily injury, sickness, disease, mental or emotional
distress sustained by a person, or death.

. . .

"Medical Incident" means any act, error or omission in your providing
professional services which results in injury or damage.  Medical incident
does not include a Good Samaritan incident, a placement services incident
or personal injury.

"Personal injury claim" means a claim arising out of personal injury.

. . .

"Professional Liability Claim" means a claim arising out of a medical incident.

"Related claim" mean all claims arising out of a single act, error or omission or
arising out of related acts errors or omissions in the rendering of professional
services or placement services.

"Related acts errors or omission" means all acts errors or omissions in the
rendering of professional services or placement services that are logically or
causally connected by any common fact, circumstance, situation, transaction,
event, advice or decision.

"You" or "Your" means the named insured and, if the named insured is not a natural person:

1.   any individual who, during the policy period, is or becomes a partner, officer, director, stockholder-employee, manager, member or employee of the named insured, but only for professional services performed on behalf of the named insured; or

2.   . . .

3.   any individual previously affiliated with the named insured as its partner, officer, director, stockholder-employee, manager, member or employee but only for professional services performed on behalf of the named insured during the course of such employment.

## V.  EXCLUSIONS

We will not defend or pay for:

A.   [as modified by Washington Amendatory Change Endorsement]

injury to:

1.   an employee of yours arising out of and in the course of employment by you; or

2.   a family member of that employee as a consequence of 1 above; or

3.   your family member.

This exclusion applies:

1.   whether you may be liable as an employer or in any other capacity; or

2.   to any obligation to share amounts with or repay someone else who must pay amounts because of the injury.

This exclusion applies only to injury to any employee of yours whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to injury to employees of yours whose employment is subject to the Industrial insurance Act of Washington, this exclusion is replaced with the following:

    A.   injury to an employee of yours arising out of and in the course of

        a.   employment by you; or

        b.   performing duties related to the conduct of your business; or

        any obligation to share damages with or repay someone else who must pay damages because of the injury.

        This exclusion does not apply to liability assumed by you under an insured contract.

    B.  any unemployment, workers' compensation, disability benefits, or other similar law;

    . . .

    D.  any liability you assume under any contract or agreement. This exclusion does not apply to:

        1.   liability you assume under a contract with a Health Maintenance Organization, Preferred Provider Organization, Independent practice Association, or any other similar organization; but only for such liability as is attributable to your alleged negligence; or

        2.   a warranty of fitness or quality of any therapeutic agents or supplies you have furnished or supplied in connection with treatment you have performed.

    . . .

F.  a willful violation of a statute, ordinance or regulation imposing criminal penalties. We will defend any civil suit against you seeking amounts, which would be covered if this exclusion did not apply. In such case, we will pay only claim expenses.

. . .

I.  the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

J.  liability resulting from professional services you provide while your license or certification to practice is suspended, revoked or no longer valid;

Case 2:08-cv-05077-LRS   Document 31-12   Filed 05/01/09

K.  injury or damage you expected or intended, or which a reasonable person would have expected.....

. . .

N.  any claim arising out of any act, error, or omission, including a medical incident . . . or personal injury that happened before the effective date of this policy.

. . .

O.  any direct or consequential injury or damage arising out of any:

1.  refusal to employ; or

2.  termination of employment; or

3.  coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

P.  any act of sexual intimacy, sexual molestation or sexual assault. We shall provide you with a defense of such claim unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admissions, whether appealed or not.  Such defense will not waive any of our rights under this policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against you;

. . .

## VI.   LIMIT OF LIABILITY

A.   Each Claim

The limits of liability stated on the certificate of insurance as applicable to "each claim" means that our liability for such claim shall not exceed such stated amount.

B.   Aggregate

Subject to provision A. above, limits of liability stated on the certificate of insurance as applicable to "all claims in the aggregate" means that our liability shall not exceed such stated amount.

C.   Claim Expenses

Claim expenses are in addition to our limits of liability.

    D.      Multiple Insureds, Claims and Claimants

The limits of liability shown on the certificate of insurance is the maximum amount we will pay regardless of the number of you insured under this Coverage Part, claims made or persons or entities making claims.

    E.      Related Claims

If related claims are made against you, all such related claims shall be considered a single claim, and the limits of liability applicable to such claim shall be the limits of liability applicable to the policy period in force when the act, error or omission, or earliest of related acts, errors or omissions, occurred.

## B.    General Liability Coverage Part

The Policy also provides General Liability coverage under Form G-121504-C (ed. 07/01), "Healthcare Providers General Liability Coverage Part – Occurrence." The General Liability Coverage Agreement provides as follows:

### I.    COVERAGE AGREEMENT

    A.      GENERAL LIABILITY

. . . We will pay all amounts, up to the General Liability limit of liability stated on the certificate of insurance, that you become legally obligated to pay . . . as a result of injury or damage to which this coverage part applies. We will also play claim expenses. The injury or damage must be caused by an occurrence . . . during the policy period.

* * *

### IV.  EXCLUSIONS

We will not defend any claim for, or pay any amounts, including claim expenses, based on, arising out of, or related to:

    A.    [as modified by Washington Amendatory Change Endorsement]

        injury to:

        1.   an employee of yours arising out of and in the course of employment by you; or

        2.   a family member of that employee as a consequence of 1 above; or

        3.   your family member.

This exclusion applies:

3. whether you may be liable as an employer or in any other capacity; or

4. to any obligation to share amounts with or repay someone else who must pay amounts because of the injury.

This exclusion applies only to injury to any employee of yours whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to injury to employees of yours whose employment is subject to the Industrial Insurance Act of Washington, this exclusion is replaced with the following:

A. injury to an employee of yours arising out of and in the course of

    a. employment by you; or

    b. performing duties related to the conduct of your business; or

any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by you under an insured contract.

B. amounts which the named insured or any party must pay under any unemployment or workers' compensation, disability benefits, or other similar law.

C. injury or damage resulting from any professional services, placement services or personal injury;

. . .

F. injury or damage resulting from a willful violation of a statute, ordinance or regulation imposing criminal penalties. We will defend any civil suit against you seeking amounts, which would be covered if this exclusion did not apply. In such case, we will pay only claim expenses.

. . .

Page 12
December 19, 2008

    J.     the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;

    K.     injury or damage you expected or intended, or which a reasonable person would have expected.....

    . . .

    V.     any act of sexual intimacy, sexual molestation or sexual assault.  We shall provide you with a defense of such claim unless or until such act has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admissions, whether appealed or not.  Such defense will not waive any of our rights under this policy.  Criminal proceedings are not covered under this Policy regardless of the allegations made against you;

    W.    any direct or consequential injury or damage arising out of any:

        5.     refusal to employ; or

        6.     termination of employment; or

        7.     coercion, demotion, reassignment, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions;

    X.     by or on behalf of you against any other of you.

The Additional Definitions section (section III) of the General Liability Coverage Form contains definitions of "injury" and "'you' or 'your'" that are identical to the definitions in the Professional Liability Coverage Part. In addition, it defines "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in injury or damage."

In addition, the "Common Policy Conditions (Form 121500-C) applicable to both the Professional Liability and General Liability Coverage Parts of the Policy contains the following potentially relevant condition:

    IV.   Separation of Insureds

        This policy applies separately to each of you against whom a claim is brought except with respect to:

Page 13
December 19, 2008

    A.  the limits of the liability; and

    B.  any of your duties as the first named insured on the  certificate
       of insurance.

The "Common Policy Conditions form also contains the following potentially relevant definitions:

> "Claim" means a demand for money or services alleging injury or
> damage.  Claim also means the filing of a suit or the starting of
> arbitration proceedings naming you and alleging injury or damage.

> "Damage" means:

>     1.  physical injury to tangible property, including all resulting
>        loss of use of that property; or

>     2.  loss of use of tangible property that is not physically injured.

> "Employee" means an individual whose work is engaged and
> directed by the named insured.

> "Personal injury" means injury arising out of one or more of the
> following offenses committed in the conduct of your professional
> services:

> . . .

>     5.  a violation of an individual's or entity's right to privacy;

>     6.  assault, battery, mental anguish, mental shock or
>        humiliation;

> . . .

> "Professional Services" means those services for which you are
> licensed, certified, accredited, trained or qualified to perform within
> the scope of practice recognized by the regulatory agency
> responsible for maintaining the standards of the profession(s)
> shown on the certificate of insurance and which you perform as, or
> on behalf of, the named insured.  . . .

Case 2:08-cv-05077-LRS   Document 31-12   Filed 05/01/09

### III.    DECLINATION OF TENDER AS TO YVONNE SHIRINZADEH

#### A.    The Professional Liability Coverage Part

The Professional Liability Coverage Part covers amounts that "<u>you</u>" become legally obligated to pay. "You" is defined in relevant part as follows:

> "You" or "Your" means the named insured and, if the named insured is not a natural person:
>
> 1.  any individual who, during the policy period, is or becomes any individual who, during the policy period, is or becomes a partner, officer, director, stockholder-employee, manager, member or employee of the named insured, but only for professional services performed on behalf of the named insured; or
>
> 2.  . . .
>
> 3.  any individual previously affiliated with the named insured as its partner, officer, director, stockholder-employee, manager, member or employee but only for professional services performed on behalf of the named insured during the course of such employment.

Here, OPT is the named insured, and Shirinzadeh should qualify as an insured under subparts 1 and/or 3 of the definition of "you."

However, American Casualty has no information to suggest that Shirinzadeh's wife, Yvonne Shirinzadeh, who is named as a co-defendant in the caption of the Complaint, is or was a partner, officer, director, or employee of OPT.  American Casualty therefore concludes that Shrinzadeh's spouse does not qualify as an insured under the Professional Liability Coverage Part, and respectfully denies coverage and/or a duty to defend Yvonne Shirinzadeh in the *Hart* action.

#### B.    General Liability Coverage Part

The General Liability Coverage Part provides coverage for all amounts "you" are legally obligated to pay because of "injury" or "damage" caused by an "occurrence."  Because the definition of "you" in the General Liability Coverage Part is identical to the definition of "you" contained in the Professional Liability Coverage Part, discussed above, American Casualty further concludes that Yvonne Shirinzadeh does not qualify as an insured under the General Liability Coverage Part.

Page 15
December 19, 2008

## IV.    RESERVATION OF RIGHTS

Based upon the available information, American Casualty concludes that the *Hart* action does not allege claims which potentially fall within the coverage provided under Policy no. HPG 025212626. However, as a courtesy, American Casualty will agree to defend Shirinzadeh in the *Hart* action, subject to a complete reservation of rights to deny coverage for any and all of the claims alleged in the *Hart* action. Our investigation is continuing, and this letter is not a final coverage position. American Casualty may modify its position upon receipt of additional information.

In particular, the *Hart* action is primarily based on federal and state anti-employment discrimination statutes. Such claims do not arise from "professional services" and/or an accidental "occurrence." Moreover, these claims fall squarely with the Policy's employment-related practices exclusions.

The Hart complaint further alleges that Angela Hart was injured as a result of Mr. Shirinzadeh's sexual misconduct and harassment and that Shirinzadeh, Irvine and OPT are all liable for the alleged sexual misconduct and harassment. Both the Professional Liability and General Liability Coverage Parts exclude coverage for "any act of sexual intimacy, sexual molestation or sexual assault" and "expected or intended injury." To the extent that Hart's claims are based upon or arise out of sexual molestation, this exclusion precludes coverage for the claims against OPT and Irvine.

Accordingly, American Casualty hereby reserves its rights to deny coverage under Policy No. HPG 0252126267 as follows:

### A.    The Professional Liability Coverage Part

- American Casualty reserves the right to deny coverage on the grounds that the *Hart* Action does not allege a "medical incident;"

- American Casualty reserves the right to deny coverage on the grounds that the *Hart* Action does not allege "personal injury;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "A," which bars coverage for "injury" to "employees" of "yours;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "F," which bars coverage for any claims arising from a "willful violation of a statute, ordinance or regulation imposing criminal penalties."

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion I, which bars

coverage for "the return or withdrawal of fees or government payments imposed directly upon you; any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law."

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion K, which bars coverage for "expected or intended" injury or damage.  This would include claims for discrimination, intentional infliction of emotional distress, outrage, assault and battery.

- American Casualty reserves the right to on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "O," which bars coverage for "direct or consequential injury" arising out of any "employment related practices."

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "P," which bars coverage for "any act of sexual intimacy, sexual molestation or sexual assault;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion N, which bars coverage for "any claim arising out of any act, error, or omission, including a medical incident . . . or personal injury that happened before the effective date of this policy.

- American Casualty has no obligation to any person or entity seeking coverage under the Professional Liability Coverage Part to the extent that such person or entity fails to comply with the assistance and cooperation clause in the Policies.

- American Casualty also reserves the right to withdraw from the defense of this matter and/or initiate an action for declaratory relief in the event it determines the allegations in the *Hart* action are not potentially covered.

- American Casualty reserves its right to assert that any alleged defense and/or indemnity obligations arising from the *Hart* action are subject to "other insurance."

- American Casualty also reserves the right to seek reimbursement of defense fees and costs with respect to the defense claims that are not potentially covered.

## B.   The General Liability Coverage Part

- American Casualty reserves the right to deny coverage on the grounds that the *Hart* Action does not allege "injury" or "damage;"

- American Casualty reserves the right to deny coverage on the grounds that the *Hart* Action does not allege an "occurrence;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "A," which bars coverage for "injury" to "employees" of "yours;"

- American Casualty reserves the right to on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "O," which bars coverage for "direct or consequential injury" arising out of any "employment related practices"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "V," which bars coverage for "any act of sexual intimacy, sexual molestation or sexual assault;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "F," which bars coverage for "injury or damage resulting from a willful violation of a statute, ordinance or regulation imposing criminal penalties"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "I," which bars coverage for ". . . any fines, penalties or sanctions; punitive or exemplary amounts; or the multiplied portion of any multiplied award, imposed by law;"

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion "J," which bars coverage for "injury or damage resulting from any professional services . . . or personal injury. To the extent that  Hart's claim arises out of professional services or personal injury, this exclusion applies.

- American Casualty reserves the right to deny coverage on the grounds that the claims set forth in the *Hart* Action are excluded under Exclusion K, which bars coverage for "expected or intended" injury or damage.  This would include claims for discrimination, intentional infliction of emotional distress, outrage, assault and battery.

- American Casualty also reserves the right to withdraw from the defense of this matter and/or initiate an action for declaratory relief in the event it determines the allegations in the *Hart* action are not potentially covered.

- American Casualty reserves its right to assert that any alleged defense and/or indemnity obligations arising from the *Hart* action are subject to "other insurance."

- American Casualty also reserves the right to seek reimbursement of defense fees and costs with respect to the defense claims that are not potentially covered.

In addition to the foregoing, American Casualty reserves the right to raise additional policy defenses, as well as legal, equitable, and contractual defenses, at any time. Our actions to date should not be construed as an admission of coverage for the claims under the subject policies. We do not waive any rights and defenses, whether or not discussed in this letter. Neither this letter, nor any future correspondence regarding this loss, should be deemed or construed as a waiver of any rights or coverage defenses under this or any other policy.

## V.    DEFENSE

American Casualty has referred the handling of Shirinzadeh's case to Rebecca Ringer. Please cooperate with her regarding this matter. As you know, Ms. Ringer can be reached at Floyd, Pflueger & Ringer, 2505 Third Ave, Ste 300, Seattle, WA 98121, phone: 206-441-4455.

## VI.    CONCLUSION

As stated above, American Casualty's coverage position is based upon the information available to us. American Casualty reserves all rights available under the Policies and at law. American Casualty's actions to date should not be construed as an admission of coverage for the claim under the Policies. American Casualty reserves its right to supplement this letter.

If you have any other information that you believe is relevant to this claim, or if you believe that we have misstated any facts, please advise us as soon as possible. Please be assured that we will give any such information all due consideration. American Casualty is committed to the prompt and fair handling of all claims for coverage.

Should you have any questions regarding this letter, please do not hesitate to contact me.

Page 19
December 19, 2008

Very truly yours,


Norene Quam
Claims Specialist
503-431-3083

Cc: Rebecca Ringer – by email